THE STATE v. DAVID ROWE and ROE SANDERS, Appellants.

### Division Two, May 29, 1917.

1. **OBJECTION: No Reason.** Where the only objection to testimony when it is offered is that it is incompetent, and where on motion to strike it out the only objection is that it is incompetent, immaterial and irrelevant, any error committed in admitting the testimony or overruling the motion cannot be determined on appeal.

2. **INSTRUCTION: Error in Giving: When Reviewable: Specific Assignment.** Although the instruction given was in the identical language of the instruction condemned in State v. Finkelstein, 269 Mo. 612, and proper exceptions were saved when it was given, yet if the only reference in the motion for a new trial which can by any fair construction be held to refer to it is: "Because the court gave the jury illegal, improper and erroneous instructions over defendant's objections," it cannot be held on appeal that error was committed in giving it.   The assignment is not su f-ciently specific.   Whatever may be the rule in civil cases, the statute (Sec. 5285, R. S. 1909) requires that the motion for a new trial in a criminal case "must set forth the grounds or causes therefor," and a liberal construction of those words means that counsel owes it to the appellate court and to the trial court to point out by number, or by technical designation, or by intelligent description, what particular instruction or instructions are wrong, or upon what point or phase of the trial, or of the case, or of the evidence, the court failed to instruct.

3. ———: **Joint Defendants: Reference to One Who Did Not Testify.**
Where two defendants are jointly indicted and of their own voli-
tion jointly tried, and one of them testifies and the other does
not, an instruction on credibility which is not error as to the de-
fendant who did testify is not error as to the other and cannot be
held to be forbidden comment as to him.

4. **CHALLENGED JUROR: Called to Sit in Case.** Where there is sub-
stantial evidence to support the finding of the trial court that a
certain juror who sat in the case was not peremptorily challenged,
and nothing appears to indicate an abuse of whatever discretion
was vested in the trial court, the appellate court cannot decide the
disputed question of fact, but must abide by the decision of the
trial court.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel
D. Fisher,* Judge.

AFFIRMED.

*James E. Dee* for appellants; *W. T. Rutherford* of
counsel.

(1) The trial court erred in permitting the prosecut-
ing witness, Graham, over defendants' objection, to state
why he had not been employed in the last seven months
before the trial, and that three weeks after the robbery
he was shot in the saloon, and that that was the reason
why he had not been employed and had been in the hos-
pital for four months.   (2) The trial court erred in giv-
ing instruction telling the jury that a defendant is a com-
petent witness in his own behalf and his testimony should
be weighed by the same rules that govern the testimony
of other witnesses, with the exception that in passing
upon it they should take into consideration the fact that
the defendant was the defendant in the case and the in-
terest he had in the result; because same is a comment on
the weight of the evidence.   State v. Mintz, 245 Mo. 542;
State v. Evans, 267 Mo. 163; State v. Shaffer, 253 Mo.
338; State v. Finkelstein, 269 Mo. 612.   (3) Said instruc-
tion is also bad because the defendant Roe Sanders did
not testify, and Sec. 5243, R. S. 1909, prohibits the court
or jury before whom the trial takes place to consider the

same or refer to the same. (4) Because the court should have granted the defendants a new trial after it discovered that the juror, Frederick Klug, although he had been challenged by the defendant, had been allowed to remain on the jury.

*Frank W. McAllister*, Attorney-General, and *S. P. Howell*, Assistant Attorney-General, for the State.

(1) The court did not err in permitting the State to elicit from the prosecuting witness what his actions had been since his release from the penitentiary. State v. Spaugh, 200 Mo. 598; State v. Starr, 244 Mo. 175. Moreover, the objection to the admission of this testimony was insufficient to preserve the error, if any, for review here, for the reason that no specific ground for its inadmissibility was assigned. State v. Wellman, 253 Mo. 302; State v. Castleton, 255 Mo. 201; State v. Kapp, 187 S. W. 1178. (2) Under the condition of the record in the case at bar, the objection to the sufficiency of instruction on defendant's credibility as a witness is not properly saved for review. Sec. 5285, R. S. 1909. State v. Finklestein, 269 Mo. 612; State v. Levy, 262 Mo. 190; State v. McBrien, 265 Mo. 594; State v. Taylor, 183 S. W. 301; State v. Gifford, 186 S. W. 1060; State v. Gilbert, 186 S. W. 1003; State v. Kapp, 187 S. W. 1180. Sec. 5312, R. S. 1909. The following authorities announce the rule which obtains in civil cases. Sec. 2022, R. S. 1909; Wampler v. Railway, 190 S. W. 908. (3) Where it does not appear from the record that the rights of appellant have been prejudiced by a failure to comply with the statute in selecting the jury panel, the finding of the lower court will not be disturbed on appeal. State v. Ward, 74 Mo. 256; State v. Gleason, 88 Mo. 582; State v. Riddle, 179 Mo. 293; State v. Jackson, 242 Mo. 420; State v. Shoemaker, 183 S. W. 324.

FARIS, J.—The defendants were tried jointly in the circuit court of the city of St. Louis for the crime of robbery in the first degree, and being by the jury found guilty had assessed against each of them as punishment impris-

onment in the penitentiary for five years. After the conventional motions they have perfected a joint appeal. With the two above named defendants one George Warrance was originally charged in the same information, but obtained a severance, and we need no longer trouble ourselves with his connection with the case.

The facts shown on the part of the State are brief, as are likewise those offered by defendant. Howard Graham, the man averred in the information to have been robbed, was a bartender in charge of the saloon of one John Miller, which saloon was situate on the northeast corner of Twentieth and Olive streets in the city of St. Louis. Miller, the owner of the saloon, was absent at the time the robbery occurred. At about eight o'clock on the evening of April 1, 1915, the two defendants and said Warrance went to Miller's saloon and endeavored to borrow the sum of five dollars from Howard Graham. The latter refused to lend them this money, but at their solicitation gave them a drink of liquor of some sort, and thereupon the three left the saloon. Some fifteen or twenty minutes later the defendants and said Warrance returned to the saloon and defendant Rowe drew his revolver, presented it at Graham and ordered him to throw up his hands. At this time there were besides Graham, three other men in the saloon, who also at the command of Rowe threw up their hands. Defendant Rowe then at the point of his revolver compelled Graham and one Sherman Holman, who was one of the customers in the saloon at the time of the robbery, to go down a stairway into the basement of the building. Steven Sandothe, another of the customers in the saloon at the time of the robbery, ran out at the side door, apparently while defendants and Warrance were disposing of the others, and saw no more of the robbery. Gus Bloomer, the third and last of the three customers, was compelled to enter the ice box, from which box through the glass window thereof, he saw some one of the party taking money out of the cash register.

The proof shows that all of the money in the cash register, amounting to some $24.60, was taken by some one of the persons engaged in the robbery. As soon as

Graham heard a noise which indicated that the cash regis-
ter was being closed, he came out of the basement and re-
leased Bloomer from the ice box.   The defendants had
left the saloon by this time.   The police were informed of
the robbery and in the course of an hour or more arrested
defendants and brought them to Miller's saloon where
they were identified by Graham.   In the course of this
identification. Rowe, applying to Graham an abusive
epithet, said to him that he "had a hell of a nerve to make
any holler."   The defendants were positively identified
by Graham, the man robbed, and by Holman, one of the
persons in the saloon at the time of the robbery.   The
witness Sandbothe is not positive in his identification.

The only witnesses produced in behalf of defendants
were Officer Gunn and defendant Rowe himself.   Defend-
ant Sanders did not testify.   No evidence of importance
was elicited from Officer Gunn except that he stated he
found no pistol on defendants when he arrested them,
but he did not remember how much money they had.   He
corroborated the conversation between defendant Rowe
and Graham, which we set out above, and the fact of the
identification of the defendants by Graham.   Defendant
Rowe denied substantially every fact stated by the wit-
nesses for the State.   He admits that he came into the
saloon on the night of the robbery, but he says that he
did so for the purpose of buying a drink and that while
doing so an argument arose between Graham and some
unknown person; that Graham reached for a pistol and
he (defendant) ran out the front door.   There is no con-
tention made, however, as to the sufficiency of the evi-
dence, nor could there be upon the facts shown in proof.

Such further facts as transpired upon the trial and
which form the basis of the several contentions urged by
defendants for reversal, will be set out when we come to
express our views.

I.   Defendant complains for that the State elicited
from the witness Howard Graham the fact that he had
been shot some weeks after the commission of the robbery

here in question and so desperately wounded as to cause

**Objection to Testimony.**
him to be confined in a hospital for four months. This statement was made by the witness upon his re-direct examination after the defendant had drawn from the witness in cross-examination the admission that he had served a term in the penitentiary for robbery, and after the witness had been asked how many men he had killed; how many men he had robbed; if he were not a dope fiend; if he had not cheated one Holman out of five hundred dollars, and whether his employer knew that he (the witness) was an ex-convict when employment as a bartender was given him. Upon the re-direct examination of the witness the State, evidently for the purpose of rehabilitation, asked the witness briefly as to his course of life since his admitted conviction for robbery—which occurred in 1905. The witness said that he had never been in trouble since such conviction and had been steadily employed except for the seven months preceding the trial. He was then asked by the State why he had not been employed also during the latter period. He answered that he was shot through the left arm and right lung three weeks after the robbery and confined as a result in a hospital for four months. When the question was asked which elicited the alleged harmful answer, the only observation made by defendants' counsel was that, "I think it is incompetent, because these defendants were in jail at that time." This statement, it will be noted, was not an objection. Subsequently a motion to strike out was made, but no reasons were given for such motion beyond the alleged facts that the answer of the witness was incompetent, irrelevant and immaterial and had no bearing on the case. Clearly the record discloses, under the authorities, no sufficient preservation of the point for our review. This view renders unnecessary any discussion whether the defendants, admittedly in jail at the time thereof, could in any event have been hurt by the admission of this statement; as also whether the question was not justified on the theory of rehabilitation, in view of the cross-examination of defendants' learned counsel. For the first reason stated, we disallow this contention.

II. Upon the trial the court gave touching the testimony of defendant Rowe (defendant Sanders did not take the stand), the identical instruction condemned by this court In Banc in the late case of State v. Finkelstein, 269 Mo. 612. The State concedes and we perforce agree that this was error for which the case must be reversed, if the point has herein been properly saved for review. Let us look alone to the latter point.

Erroneous Instruction: Specific Assignment.

The proper exceptions were saved when the instruction was given; but the only reference in the motion for a new trial, which can by any construction be held to refer to the instruction now criticised or to any other, is this, to-wit: "Because the court gave the jury illegal, improper and erroneous instructions over the defendants' objections." This is not a sufficient pointing out of error. The trial court is fairly entitled to have his attention directed to the errors which he has committed with such specificness at least as will enable him to find the *situs* of alleged error, without putting an unnecessary burden upon his time and care. [State v. McBrien, 265 Mo. l. c. 604.] Likewise, for reasons to be seen below and in the dissenting views of the writer in the Finkelstein case, supra, we are entitled to know wherein the instructions given or omitted are erroneous or insufficient. Whether there exist differences in the rules which respectively govern appellate practice in civil and criminal cases we are not required to here determine. The assignment of error herein would not be sufficient in a civil case. The statute which provides with what definiteness a motion for a new trial in a civil case shall set out the reason therefor (Sec. 1841, R. S. 1909) has, by reason of its now position in the statute, due to codification and revision, seemingly, *though not actually,* lost some of its appositeness. Going afield a moment to recall a bit of its history, we note that said Section 1841 first came into our practice acts in 1835, and then read thus:

"All motions for new trials and in arrest of judgment, shall be made within four days after the trial, if the term shall so long continue, and if not, then before the

end of the term; and *every such motion shall be accompanied by a written specification of the reasons upon which it is founded.*" [Sec. 1, p. 469, R. S. 1835.]

The above provision was again printed in the Revision of 1845 among the requisite details of a motion for a new trial, and as yet having reference to no other kind of motions whatever, but was put into a separate section. [Sec. 2, p. 830, R. S. 1845.] Four years later the present practice code was passed (Laws 1849, p. 73), but it contained no express provision as to what any motion should contain. In 1855 the whole practice act was revised, and the living parts, that is, the parts of the old practice act which had not been abrogated or repealed by the new Code of 1849, were put into one revised bill with the said code, and in this revised act the section (now Sec. 1841, R. S. 1909) designating the requisite contents of a motion for a new trial, was put among miscellaneous details of civil practice, and thus for the first time made to apply to all formal motions of what ever kind, made under the civil code. [Sec. 27, p. 1235, R. S. 1855; Sec. 48, p. 662, G. S. 1865; Sec. 3557, R. S. 1879; Sec. 2085, R. S. 1889; Sec. 640, R. S. 1899; Sec. 1841, R. S. 1909.]

But we have left no room for doubt as to what statute governs us as to the contents of a motion for a new trial in a criminal case, and what that statute requires. [Cf. sec. 5285, R. S. 1909.] The controlling language is, that "the motion for a new trial shall be in writing and must set forth the grounds or causes therefor." [Sec. 5285, supra.] It will be noted that the language of this section does not say that it *may* set forth the grounds and causes therefor, but that it *must* do so; neither does it say that part of such a motion may be oral and the remainder in writing, or that a part of it must be in writing and the rest of it held in ambush, or in reserve solely for the ear of the appellate tribunal, or in the secret crannies of learned counsel's mental processes, but it says the motion shall be in writing. Upon the only dark or doubtful point left us, that is, the question: What is a sufficient setting forth of the grounds and causes? we have been fairly liberal. We have never required to be

set forth the reasons why any given instruction is wrong. But time and again we have said substantially that counsel in a criminal case of sufficient gravity to warrant an appeal, owes it both to this court and to the court *nisi* to point out by number, or by technical designation or by .intelligible description, what particular instruction or instructions are wrong; or upon what point, or phase of the trial, or of the case, or of the evidence the court failed to instruct. [State v. Levy, 262 Mo. 181; State v. McBrien, supra; State v. Taylor, 267 Mo. 1. c. 48; State v. Gifford, 186 S. W. 1058; State v. Kapp, 187 S. W. 1178.] For the performance of this duty counsel is allowed four full days, usually. So much we deem due under this statute to the courts; to the trial court that it may be allowed a fair opportunity to correct its own mistakes and so iron out delays and expedite justice; and to the appellate courts that they may not waste their time in seeking out error in undesignated instructions wherein no error lies. Keeping in mind the statute which requires us to comb the record of a criminal case for error (Sec. 5312, R. S. 1909), as well as the provisions of Section 5285 above set forth, no other view seems plausible. It results that this assignment of error must be disallowed.

III. The further contention, that the instruction upon the weight of defendant's evidence is bad, because of the fact that defendant Roe Sanders, though jointly tried with defendant Rowe, did not himself testify in the case, Rowe being the only one of defendants called as a witness, is affected by the same infirmity. Both contentions go to the correctness of an instruction, or to the propriety of giving it. Both points are alone preservable by a proper and sufficient motion for a new trial. But if it be contended wholly aside from the instruction phase that as to Sanders the instruction is a forbidden comment upon the failure of the latter to testify upon the trial, then the answers are: (a) that he was of his own volition jointly tried with Rowe, and the forbidden comment—if it was such and viewed solely as such—was not error as

*Joint Defendants: Forbidden Comment.*

to Rowe, therefore it was not error as to Sanders; and (b) the point that the instruction constituted a forbidden comment upon Sanders' failure to take the stand was in no way preserved for review here.

IV.  It is urged that one Frederick Klug, who qualified upon his *voir dire* examination upon the panel from which the trial jury was selected, was in fact peremptorily challenged by defendant, but was through an error called into the jury-box by the deputy sheriff and actually served as one of the trial jurors.  In proof of the fact of such peremptory challenge of Klug there are appended the affidavits of the two defendants and of their counsel, which latter affidavit is accompanied by a copy of the jury list (authenticated as a true copy merely by the affidavit of counsel for defendant).  Against this showing the State offered the counter affidavit of the deputy sheriff who held the jury list and called the trial panel into the jury box, and who swears that the name of Klug was on the list unchallenged, and for this reason he called him as a juror and he served as such.

Calling Challenged Juror.

It will be seen that the affidavit of the officer contradicts diametrically the affidavits of defendants and their counsel.  The copy of the jury list shown us here contains but *eleven names unmarked* upon the panel, so that if it be a fact that the juror Klug was challenged by defendant, then but eleven unchallenged men were left thereon to try the case.  So, if Klug was challenged, then either the defendant or the State challenged peremptorily more jurors than the law gives them the right to challenge. Whether this error, if it was such, was committed by the defendant, or by the State, we are unable to determine from the copy of the list before us.  Questions both of fact and law arise upon an appeal, concretely presented by the twin queries: (a) Did the thing complained of actually happen upon the trial of the case?  And (b) if it did actually happen, is it reversible error?

271 Mo.—7

State v. Rowe and Sanders.

Manifestly we cannot come to the last point till we have disposed of the first one. Defendants and their counsel depose that the erroneous calling of a challenged juror actually happened in their presence, but they did not find it out till the case was over and they had lost. The deputy sheriff is' equally positive it did not happen at all. The officer is corroborated by the patent fact that if Klug were actually challenged by either side, then there were left upon the list but eleven jurors, where a full panel of twelve should have appeared. It follows that though an error may have occurred upon the one point or the other, there is no way for us to definitely ascertain here upon which point the error was. The learned trial court held, in connection with other views he perhaps also entertained upon the question, against defendants upon the question of fact. There was substantial proof, aided by some corroboration to support his finding. We know of no rule of law which will permit us to overturn the holding of the court *nisi* upon a disputed question of fact upon a point like this in a criminal case. If there was no substantial evidence to sustain the trial court, or if the matter rested in judicial discretion and it were palpable that he had abused this discretion, the rule would be wholly different. Our trouble as an appellate court, and we meet it on the very threshold, is that we are powerless to determine where the truth of the thing lies and so we must needs say that the court below was right. It follows that we are constrained to disallow this contention also.

Let the case be affirmed. All concur.