## THE STATE v. TONY OERTEL, alias TONY ORTEL, Appellant.

### Division Two, December 4, 1919.

1. **INFORMATION: Burglars' Tools.** The information set out in the statement, both in form and substance, fully meets the requirements of the statute defining the crime of felonious possession of burglars' tools.

9—280 Mo.

2. **EVIDENCE:** Insufficiency. The appellate court will not set aside a verdict, even in a criminal case, on the ground that the evidence is not sufficient to support the verdict, unless there is a total failure of evidence, or the evidence is so weak that the necessary inference is that the verdict is the result of passion, prejudice or partiality.

3. ————: Burglars' Tools: Expert Testimony: Policemen. Police officers who have had many years' experience in dealing with burglars and are familiar with the character of tools they use, are competent to testify, in the prosecution of a defendant for having in his possession burglars' tools in violation of the statute, that a hammer, bullets, a punch, jimmy, screw-driver and flashlight, found in defendant's automobile at the time of his arrest at one o'clock at night, are tools usually used by burglars in burglarizing dwellings, warehouses and such buildings.

Appeal from St. Louis City Circuit Court.—*Hon. Charles B. Davis,* Judge.

AFFIRMED.

*Frank W. McAllister,* Attorney-General, and *Shrader P. Howell,* Assistant Attorney-General, for the State.

(1) The information, both in form and substance, fully meets all requirements. Secs. 4529, 4913, R. S. 1909; State v. Moore, 121 Mo. 517; State v. Vaughan, 199 Mo. 108; State v. Collins, 266 Mo. 95; State v. Levy, 262 Mo. 181; State v. Moulton, 262 Mo. 137; State v. Payne, 223 Mo. 112; Ex parte Roberts, 166 Mo. 207. (2) The court correctly and fully instructed the jury on all questions of law necessary for their guidance in reaching a verdict under the evidence. State v. Boyd, 178 Mo. 2; State v. Levy, 262 Mo. 181. (3) The court did not err in admitting the testimony of police officers that the tools and instruments introduced in evidence were such as were usually employed by burglars. State v. Daly, 210 Mo. 677; Helfenstein v. Medart, 136 Mo. 615; State v. Mount, 79 Minn. 121; Rogers on Expert Testimony, secs. 16 and 18, pp. 39, 41; 1 Wharton's Crim. Evidence, sec. 403, note 1; State v. Harrold, 38 Mo. 496. (4) The evidence submitted on the trial is

amply sufficient to establish all the elements of the crime charged and fully supports the verdict returned by the jury. State v. Vaughan, 199 Mo. 108; State v. Concelia, 250 Mo. 411.

RAILEY, C.—On February 6, 1917, the Assistant Circuit Attorney of the City of St. Louis, Missouri, filed, in the Circuit Court of said city, a verified information, charging defendant with the crime of felonious possession of burglars' tools. The information, without caption and verification, reads as follows:

"Wm. S. Connor, Assistant Circuit Attorney, in and for the City of St. Louis aforesaid, within and for the body of the City of St. Louis, on behalf of the State of Missouri, upon his official oath, information makes as follows:

"That Tony Oertel, *alias* Tony Ortel, on the 24th day of March, in the year of our Lord one thousand, nine hundred and fifteen, at the City of St. Louis aforesaid, in the Circuit Court of the City of St. Louis, was duly convicted on his own confession of the offense of grand larceny and in accordance with said conviction was duly sentenced by said court to an imprisonment in the penitentiary of the said State of Missouri for the term of two years, and was duly imprisoned in said penitentiary of the State of Missouri in accordance with said sentence, and that the said Tony Oertel, *alias* Tony Ortel, was duly discharged from said penitentiary of the State of Missouri after and upon lawful compliance with said sentence; and that the said Tony Oertel, *alias* Tony Ortel, after the said discharge of said Tony Oertel, *alias* Tony Ortel, from said penitentiary of the State of Missouri, to-wit, on the 30th day of December, in the year of our Lord one thousand, nine hundred and sixteen, at the City of St. Louis aforesaid, did then and there unlawfully and feloniously have in his custody two punches, one piece of iron, of the length of about two feet and of the weight of about three pounds, curved at the end, commonly known as a gooseneck 'come-along,'

one screw-driver, one hammer and one flashlight, said instruments being then and there material, implements and mechanical devices, adapted, designed and commonly used for breaking into a warehouse, store, shop, office and dwelling house; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

On February 12, 1918, defendant was formerly arraigned and entered his plea of not guilty. The trial was commenced in the above court on February 12, 1918, and resulted in a verdict being returned the following day, as follows:

"We the jury in the above entitled cause, find the defendant guilty of unlawfully having burglars' tools in his possession as charged in the information, and assess the punishment at imprisonment in the penitentiary for two years."

The evidence in behalf of the State is substantially as follows:

It appears from the testimony of Police Officer Felix P. Katke, that at about 1 a. m. on the morning of December 30, 1916, this officer, together with Policeman Jones, was standing on Market Street about twenty-five feet east of Grand, when they observed an automobile going west on Market at a very high rate of speed, containing three or four men. Officer Jones called to the men to halt, but instead of doing so they increased the speed of the car. The two officers thereupon commandeered a nearby car and pursued the car containing the three or four men, which they overtook at Grand and Hickory Streets near the front of the Armory. The officers jumped off the running board of their car and ran to the car they were pursuing, which was a large Packard, covered the chauffeur and the defendant, who was in the rear seat, with their guns, it appearing that the other two men had left the car before the officers arrived. Witness Katke, further testifying, stated that the defendant was sitting in the back seat and Officer Jones jerked the curtain open and

covered him with his gun, and, upon the officer ordering him to come out, the "defendant went down to his hip pocket and throwed a gun down on the seat as he was stepping out of the car." The officers then threw their searchlight on the floor and seat, where defendant had been sitting, and found a hammer, bullets, a punch, a jimmy, an instrument used to drive out rivets on a combination, and all of which, the policeman testified, were tools and implements usually employed by burglars in plying their trade. The witness further testified that he was familiar with the tools and implements employed by burglars, and was able to testify that the hammer was used to knock off the knob of the safe, and the punch to drive out the rivets which held the tumblers to the safe, and the screw-driver and jimmy were used to pry and force doors and windows and for breaking into dwelling and warehouses. All of these instruments were identified by this witness and introduced in evidence.

On cross-examination, Officer Katke stated that, in his judgment, the car was running at the rate of twenty-five or thirty miles an hour. He also admitted that while the tools and implements were such as commonly employed by burglars, at least the flashlight and screw-driver might be used in the repair of automobiles, but the jimmy could not be so employed.

The State introduced John Shea, who was Superintendent of the Bureau of Identification, and had been connected with the Police Department of St. Louis for about nineteen years. The witness testified, that he had occasion, in the prosecution of his work as a police officer, frequently to see and examine tools and implements employed by burglars in opening safes and breaking into dwellings and warehouses, and upon being shown the implements and tools which had been taken from the car in which this defendant was riding on the night of December 30, 1916, he testified that all of them were the kind and character employed by burglars. The jimmy was used ordinarily to pull off combinations to

safes, the punch to knock out the rivets so as to remove the tumblers, the screw-driver to force and pry, and the hammer and flashlight were such as were usually carried by burglars.

The State then introduced Frank McKenna, who had been a police officer in St. Louis for twenty-four years, and who testified that he had knowledge of and was familiar with the kind and character of tools employed by burglars in breaking open safes and forcing the doors and windows of dwellings, warehouses and such places. Upon being shown the instruments found in the car in which the defendant was riding on the night in question, he affirmatively testified that they were instruments used by burglars and commonly known as burglars' tools. His testimony as to the particular use of each of the instruments introduced in evidence, was substantially the same as that given by Officer Katke and Superintendent of the Bureau of Identification, John Shea.

Gustave Slingman, a deputy clerk in the criminal division of the St. Louis City Circuit Court, was called to the stand and read into the record a judgment of conviction of this defendant on March 25, 1915, on the charge of grand larceny and for which he was sentenced to serve two years in the penitentiary. In connection with this, the State then offered in evidence the record showing that this defendant had in fact been received at the State penitentiary and had served his term and had been discharged under the three-fourths law, on December 23, 1916.

The evidence in behalf of appellant is substantially as follows:

Herbert Schultz, who was called on behalf of the defendant, testified that he was in the automobile repair business, and that he had rented to the defendant, on the night of December 30, 1916, a seven-passenger Packard car. This witness testified that the flashlight and hammer, introduced in evidence, belonged to him, and that they, together with at least some of the other in-

struments, which are not clearly identified in the evidence, were in the car when he rented it to this defendant.

On cross-examination, the witness stated that he had but the one car on December 30, 1916. He identified the hammer as belonging to him, and said: "Well, it looks like my punch—that is all I can say about it."

Sam Prussen, who was a fruit dealer, formerly a carpenter and had had experience in handling automobiles, testified that the hammer and screw-driver and the other tools shown to him were such as could be used by carpenters and persons other than burglars. On cross-examination, he stated that he had known the defendant about nine months, and that he had signed the bond of the defendant in a former case which was in the courts about nine or twelve months prior to the instant case.

The defendant, Tony Ortel, took the witness stand in his own behalf, and, after admitting that he had served eighteen months in the Missouri State Penitentiary on the charge of grand larceny, stated that on the night in question he hired a car at Grand and Olive for the purpose of going to a roadhouse somewhere in South St. Louis, but that he was unable to give the name or place where such resort was located. He further stated that it was a Packard car, and that there was no one in the car but himself and the chauffeur, and that he afterwards learned that the car belonged to a man by the name of Schultz. He further said that he was tending bar in December, 1916, for a man by the name of Gleason, but that he was off duty on the night of December 30, 1916. At the time of his arrest, he denied seeing the gun in the car and said that he knew nothing about the tools and implements being in the car, as testified to by Police Officer Katke. On cross-examination, defendant stated that he had been working for Gleason for only about a month and that his employer was, at the time of the trial, out of business, and he didn't know where he was, nor did he know where the

roadhouse was located, except that it was on South Grand Avenue. The witness further admitted that he had not had a subpoena issued for the chauffeur, whose name was Nolte, nor had he made any effort to find the chauffeur, to locate him, so as to have him present at this trial. He also said that he had been drinking the evening of his arrest and was pretty full at that time.

The court gave, without objection, eight instructions, which properly declare the law of the case, and none of which are challenged in defendant's motion for a new trial.

Appellant, in due time, filed his motion for a new trial and assigned as error therein, only three grounds, as follows:

"(1) That the verdict is against the law and evidence;

"(2) That the verdict is against the weight of evidence;

"(3) That the court erred in admitting evidence which was incompetent, irrelevant and immaterial."

The above motion was overruled and, on March 29, 1918, the circuit court pronounced judgment and sentence upon defendant in conformity to the law and verdict of the jury. Defendant, in due time, appealed the cause to this court.

I. The information, both as to form and substance, fully meets the requirements of the law. [Secs. 4529 and 4913, R. S. 1909; State v. Collins, 266 Mo. 95; State v. Levy, 262 Mo. 181; State v. Moulton, 262 Mo. 137; State v. Payne, 223 Mo. 112; State v. Vaughan, 199 Mo. 108; Ex parte Joseph Roberts, 166 Mo. 207; State v. Moore, 121 Mo. l. c. 517.]

Information.

II. The court fully and correctly instructed the jury on all questions of law necessary for their guidance in passing upon the case. [State v. Looney, 204 S. W. 25; State v. Wansong, 271 Mo. 50, 58-9; State v. Rowe, 196 S. W. 7; State v. Gifford, 186 S. W. 1058; State v.

Levy, 262 Mo. 181; State v. Boyd, 178 Mo. 2.] None
of the instructions given by the court were objected to
by defendant, nor is any error assigned in the motion
for a new trial, in respect to instructions.

III.    The first two errors assigned by appellant in
his motion for a new trial, are:

"(1)    That the verdict is against the law and evi-
dence;

"(2)    That the verdict is against the weight of evi-
dence."

The law is well settled in this State that, even in
criminal cases, before this court will relieve on the
ground that the verdict is not supported by the evi-
dence, there must be either a total failure of evidence,
or it must be so weak that the necessary inference is
that the verdict is the result of passion, prejudice or
partiality.    [State v. Cook, 58 Mo. 1. c. 548; State v.
Musick, 71 Mo. 401; State v. Zorn, 71 Mo. 415; State
v. Glahn, 97 Mo. 689; State v. Howell, 100 Mo. 1. c.
659; State v. Concelia, 250 Mo. 1. c. 424-5; State v.
Snyder, 263 Mo. 1. c. 669; State v. Miller, 264 Mo. 441;
State v. Looney, 204 S. W. 25.] The record of defend-
ant's former conviction of a felony shows that he was
a criminal. The evidence, heretofore set out, in our
opinion, was amply sufficient to sustain his conviction.

The two assignments of error, supra, in the motion
for a new trial, are without merit and overruled.

IV.    Appellant's third assignment of error in his
motion for a new trial, reads as follows:

"(3)    That the court erred in admitting evidence
which was incompetent, irrelevant and immaterial."

The defendant has filed no brief or argument in this
court and, hence, we are unable to determine from the
above assignment, whose evidence, he claims, was im-
properly admitted at the trial. Outside of the record
evidence relating to defendant's former conviction of
a felony, and the service of his term in the Missouri
Penitentiary, practically all of the State's evidence was
given by policemen of the City of St. Louis. The court

committed no error in permitting said officers to testify that the tools and instruments taken from the automobile in which defendant was riding at the time of his arrest, were such as were usually employed by burglars. These officers, from their experience in dealing with such questions, were competent to testify as to whether the tools, etc., in said automobile, were such as burglars were in the habit of using. Policemen who have arrested, and successfully prosecuted, criminals found in possession of the tools described in Section 4529, Revised Statutes 1909, under which this proceeding was commenced, are in much better position, by reason of their practical experience, to express an opinion as to the tools generally used by burglars, than those who have studied the question scientifically. The court, therefore, did not err in admitting the testimony of the police officers, to the effect that the tools and instruments introduced in evidence were such as are usually employed by burglars. [Rogers on Expert Testimony, secs. 16 and 18, pp. 39-42; 1 Wharton's Criminal Evidence, sec. 403, note 1; State v. Daly, 210 Mo. 664, l. c. 677; Helfenstein v. Medart, 136 Mo. 595, l. c. 615.; State v. Harrold, 38 Mo. 496; State v. Minot, 79 Minn. 118, l. c. 121.]

Upon a careful consideration of all the proceedings which occurred during the progress of the trial, we do not find any rulings of the court which deprived defendant of any of his legal rights. In other words, we find no adverse rulings of the court of which defedant has any just ground of complaint. The above assignment is, therefore, without merit and is overruled.

Upon a full consideration of all the facts before us, we are of the opinion, that there is ample evidence in the record to sustain defendant's conviction, and that he has received a fair and impartial trial. We accordingly affirm the judgment of the trial court, and direct that the sentence pronounced be executed. [R. S. 1909, sec. 5301.]

PER CURIAM:—The foregoing opinion of RAILEY, C., is approved by the court. All of the judges concur.