STATE of Missouri, Plaintiff-Respondent,

v.

Jerald Cecil BIZZLE, Defendant-Appellant.

No. 34487.

Missouri Court of Appeals,
St. Louis District,
Division One.

Aug. 14, 1973.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 10, 1973.

**260**

Robert L. Officer, Clayton, for defendant-appellant.

Darryl L. Hicks, Pros. Atty., Warrenton, John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., Clayton, for plaintiff-respondent.

WEIER, Judge.

As a result of his attempt to break out of jail before conviction, the defendant, Jerald Cecil Bizzle, was found guilty of assault with malice aforethought and with intent to do great bodily harm in violation of § 559.180, RSMo 1969, V.A.M.S. The jury assessed the defendant's punishment at imprisonment for a term of twenty-eight years, and his sentence was set in accordance with the verdict. The defendant urges two points on this appeal. He urges, first, that since his motion for a new trial was heard and determined in his absence, he was denied his state constitutional right, in criminal prosecutions, to appear and defend in person. The defendant also contends that the evidence adduced at the trial was legally insufficient to support the jury's verdict, and that the verdict was rendered by the jury with passion, prejudice or partiality. Defendant's second contention shall be considered first.

■ Our appellate courts, in a criminal prosecution, do not weigh the evidence, but regard the substantial testimony and every reasonable inference therefrom favorable to the verdict of the jury as true. State v. Jones, 363 Mo. 998, 255 S.W.2d 801, 804 [2] (1953). And, furthermore, when appellate courts do test the sufficiency of the evidence in a criminal prosecution, the evidence and reasonable inferences therefrom " * * * must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded." (citations omitted) State v. Strong, 484 S.W.2d 657, 661 [9] (Mo.1972). Among the witnesses presented by the State at the trial were the two admitted participants in the attempted jailbreak, Clyde Murrell and Russell Taylor. Although most of their testimony was favorable to the defendant, some of it clearly was not favorable to him. Also called by the State was Void Pettig, the Deputy Sheriff of Warren County. He testified that while he was struggling with Clyde Murrell during the attempted jailbreak, the defendant assaulted him from the rear and choked him, causing him to be "partly blacked out". Deputy Pettig further testified that after he regained full consciousness, he heard the defendant "hollering for me to give him the key".

■ The defendant claims that the testimony of Deputy Pettig was not substantial testimony because he did not actually see the defendant assault him and because he was partly blacked out. It must be pointed out, however, that Deputy Pettig affirmatively identified the defendant as his assailant before he partly blacked out. Furthermore, the recognition of a person's voice, without more, has been held to constitute a competent identification of a defendant in a criminal case. State v. Hall, 7 S.W.2d 1001, 1004 [2] (Mo.1928). Thus, an examination of the record discloses that the verdict was supported by substantial testimony. Indeed, Deputy Pettig's testimony alone, if believed by the jury beyond a reasonable doubt, is suffi-cient to establish the defendant's identity because the testimony of a single witness is all that is necessary for that purpose. State v. Brown, 480 S.W.2d 843, 844 [1] (Mo.1972). In addition, evidence is sufficient to support a conviction when it fairly shows any form of affirmative participation in a crime. State v. Ramsey, 368 S.W.2d 413, 417 [5] (Mo.1963).

Since it is entirely within the jury's province to determine the credibility of witnesses, the jury here was entitled to believe the testimony of Deputy Pettig and disbelieve those portions of Clyde Murrell's and Russell Taylor's testimony which were favorable to the defendant. The State's evidence was ample for submission to the jury, and we will not review its weight where it plainly appears, as here, that the State's evidence, when viewed in the light most favorable to it, was legally sufficient to support the jury's verdict of guilty.

In conjunction with his claim that the trial evidence was legally insufficient to support the guilty verdict, the defendant also submits that the twenty-eight year term of imprisonment assessed by the jury must have been the result of passion, prejudice or partiality. In support of this further contention, the defendant argues that the severity of the sentence, when weighed against the slight evidence on which it is based, indicates passion and prejudice. We do not agree. Although an appellate court can set aside a guilty verdict when the evidence is " 'so weak that the necessary inference is that the verdict is the result of passion, prejudice, or partiality,' " State v. Hancock, 340 Mo. 918, 104 S.W.2d 241, 244 [2] (1937) (quoting State v. Oertel, 280 Mo. 129, 217 S.W. 64, 66 [2] (1919)), we have already decided that the evidence in this case is legally sufficient to support the jury's verdict. The evidence gleaned from the testimony of Deputy Pettig and from the unfavorable testimony of Clyde Murrell and Russell Taylor is not the kind of weak evidence contemplated by the rule in *Hancock*.

The severity of the defendant's sentence does not aid his argument. The length of the sentence is not wholly dependent upon the sufficiency of the evidence to sustain a verdict of guilty. Its length is prescribed by statutory law. And here the punishment was within the statutory limit of "not less than two years" as prescribed by § 559.180, *supra*. "[A] sentence cannot be adjudged excessive by an appellate court when it falls within the range provided by law." State v. Smith, 445 S.W.2d 326, 332 [6] (Mo.1969).

Secondly, the defendant contends that since his motion for a new trial was heard and determined in his absence, he was denied his state constitutional right, in criminal prosecutions, to appear and defend in person. In support of this contention, the defendant maintains that he wanted to be present at the hearing of the motion, and that he was prejudiced by his absence.

Undeniably, a defendant in a criminal prosecution has a right to appear and defend, both in person and by counsel. Mo. Const., Art. 1, § 18(a), V.A.M.S. A defendant in a felony case also has a statutory right to be personally present during the trial. § 546.030, RSMo 1969, V.A.M.S.; *see also* Rule 29.02, V.A.M.R. In this case, however, the defendant is not basing his claimed right to appear and defend in person upon either the statute or the rule, but rather upon the more broadly worded constitutional provision, Mo.Const., Art. 1, § 18(a), *supra*. The constitution gives the defendant the right to appear and defend in person in a criminal prosecution rather than the narrower right, contained in both the Missouri Statute and the Missouri Supreme Court Rule, to be personally present *during the felony trial*. The defendant's statutory right to be personally present at the trial has been construed not to encompass a hearing on the motion for a new trial. State v. Brown, 63 Mo. 439, 445 (1876); State v. Neal, 350 Mo. 1002, 169 S.W.2d 686, 692–693 [7–9] (1943). The defendant's constitutional right to appear and defend in person in criminal prosecu-

tions, however, has been held to have no such restricted meaning as "trial" in the technical narrow sense of the statute, but extends to and includes the right to appear and defend in person when a motion for new trial is submitted to the trial court. State v. Hoffman, 78 Mo. 256, 259–260 (1883). Irrespective of the wisdom of this last decision (two judges dissented), it has since been held that before defendant may claim an infraction of his constitutional right, the record must affirmatively show defendant requested and was denied the right to be present. State v. Neal, *supra*, 350 Mo. 1002, 169 S.W.2d 686, 693 [9] (1943), and cases therein cited; State v. Durham, 416 S.W.2d 79, 83 [8–10] (Mo. 1967).

The defendant claims that he desired to be personally present at the hearing on the motion for new trial, and the record does show that his counsel applied for a writ of habeas corpus ad testificandum requesting the defendant's presence so that he could testify at the hearing about alleged jury misconduct. But the record also discloses that defendant's counsel did not apply for the writ until late in the afternoon on December 22, 1971, knowing that the hearing on the motion for a new trial had been set nearly two weeks previous for the next day, December 23, 1971. Although an application for a writ of habeas corpus ad testificandum constitutes proper procedure for obtaining the defendant's presence at the hearing to testify about the alleged jury misconduct (§ 491.230, RSMo 1969, V.A.M.S.), the application for the writ, which was the only request for the defendant's presence, was not timely made. At least two courts have held that a trial court's denial of the defendant's writ of habeas corpus ad testificandum was proper where it appeared that the defendant for some time had known the whereabouts of the witness sought, and had known the date set for trial, but had made no effort to present his application until the day before the trial or the day of the trial. Gibson v. United States, 53 F.2d 721, 722 [3]

(8th Cir. 1931); Brewer v. United States, 150 F.2d 314, 315 [2] (9th Cir. 1945).

■ In this case defendant's counsel knew the defendant was in prison. He also knew when the defendant's motion for a new trial had been set for a hearing, yet he made no effort to apply for the writ until the day before the hearing. Under these circumstances, the defendant's request for a writ of habeas corpus ad testificandum to obtain the defendant's presence at the hearing on the motion for new trial was not timely made; and, therefore, his state constitutional right to appear and defend in person was not denied.

The application for the writ of habeas corpus ad testificandum was entered on the Warren County Circuit Court Docket on December 22, 1971, but the docket contains no further notation which might indicate the disposition of the application. It would appear, then, that the application for the writ and a fortiori the defendant's request to be present at the hearing were never formally denied. We cannot be certain that the trial judge was even aware that the application for the writ had been made when the motion for the new trial was heard and determined in the defendant's absence the following morning. On December 23, 1971, the record discloses that defendant's counsel appeared at the hearing on the motion for a new trial but again the record fails to disclose any objection made by him to the fact that either his application for a writ of habeas corpus ad testificandum had been denied or that it had not been considered at all. Nor did defendant's counsel make any objection at the hearing to the fact that defendant was not personally present at the hearing. Counsel did not suggest at that time that the hearing be postponed until defendant's presence could be secured. In fact, the record discloses that the motion for a new trial was submitted and argued by "consent" of the parties.

■ It is a general rule that when one believes his constitutional right has been violated, he should raise an objection at the earliest opportunity, and failure to do so amounts to a waiver of the objection. State v. Kitchin, 282 S.W.2d 1, 4 [5] (Mo. 1955); State v. Neal, 350 Mo. 1002, 169 S.W.2d 686, 694 [10] (1943). In this instance, the earliest fair opportunity for the defendant's counsel to have raised an objection to the ascribed invasion of the defendant's constitutional right to be personally present at the hearing would have been at the hearing itself, and the failure to do so amounts to a waiver of the right. Had such an objection been made, it would have given the trial court an opportunity to correct its error, if any, by requiring the defendant to be present or by affording an opportunity for further hearing prior to sentencing. As has been previously stated, not only did defendant's counsel fail to make any objection at all concerning the defendant's absence at the hearing but also, according to the record, the motion was submitted and argued by "consent" of the parties. Furthermore, neither at allocution nor at sentencing, when both defendant and his counsel personally appeared before the court, did either of them object to the defendant's absence at the hearing. Indeed, at allocution and pursuant to his statutory duty as stated in § 546.570, RSMo 1969, V.A.M.S., the trial judge asked both the defendant and his counsel if either of them knew of any legal reason or cause to show why judgment should not be pronounced against the defendant. In response, neither defendant nor his counsel raised any objection to the defendant's absence at the hearing. Now, on appeal, this is the first time, and apparently as an afterthought, that the defendant objects to his absence at the hearing. Not only did the defendant fail to timely request his presence at the hearing but also his attorney failed to object to his absence at the earliest fair opportunity. This constituted a waiver of his constitutional right to be present at the hearing on the motion for a new trial.

The defendant also argues that he was denied his constitutional right, in criminal

prosecutions, to appear and defend in person since he was prejudiced by his absence at the hearing on the motion for a new trial. He maintains this prejudice arises from his absence because his testimony was the only evidence available to him in support of his allegation of jury misconduct, one of the specified errors contained in the motion for a new trial.

■ It is the rule in this jurisdiction that " [o]ne claiming misconduct affecting the jury must promptly call such to the attention of the court upon first knowledge of the defendant or his attorney and opportunity so to do. If not so called to the attention of the court at the time it must affirmatively appear that defendant and his counsel were ignorant of the misconduct at that time. A defendant having such knowledge cannot await the result of the trial, and if he loses his gamble take advantage of it by first asserting such in his motion for new trial." (citations omitted) State v. Blair, 280 S.W.2d 687, 689 [2] (Mo.App.1955). In the case before us, the alleged misconduct concerned the content of the jury's deliberations accidentally overheard by the defendant while he was sitting in the courtroom. Obviously, the defendant had knowledge of the alleged misconduct prior to the time the jury rendered its verdict. Neither before nor when the verdict was rendered did the defendant or his counsel call the alleged misconduct to the attention of the court. Under such circumstances the objection to the conduct of the jury "comes too late when raised for the first time in the motion for a new trial." State v. Bobbst, 269 Mo. 214, 190 S.W. 257, 260 [4] (1916). Furthermore, the fact that the defendant had knowledge of possible jury misconduct independent of that of his counsel provides him with no recourse, for he is guilty of inexcusable negligence in not communicating that knowledge to his counsel so that the proper objection could be raised. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 104 [8–9] (1935). Here defendant's knowledge of facts indicating possible jury misconduct acquired prior to the verdict cannot be raised for the first time in a motion for a new trial irregardless of whether the defendant had communicated such knowledge to his counsel prior to or after the verdict. The defendant, consequently, was not prejudiced by his absence at the hearing on the motion for a new trial.

The judgment is affirmed.

DOWD, C. J., and CLEMENS, J., concur.