**James H. GUELKER, Appellant,**

v.

**DIRECTOR OF REVENUE,**
**Respondent.**

**No. ED 76206.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 10, 2000.

Joseph P. Westhus, Chesterfield, Michael J. Gorla, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

RICHARD B. TEITELMAN, Judge.

James H. Guelker (Driver) appeals from the judgment of the Circuit Court sustaining an order of the Director of Revenue suspending his driving privileges. Driver claims he was denied due process in that he did not have a meaningful opportunity to have the merits of his case heard and considered by an Article V judge prior to entry of judgment. We agree. Reversed and remanded.

*Factual and Procedural Background*

On April 3, 1998, a St. Louis County police officer responded to a report of a single-vehicle accident in south St. Louis County. When he arrived at the scene, the officer saw a van that had struck a sign and lightpost and was lodged up on the curb. The van was in flames. Driver was laying on the ground near the van, injured and bleeding. The officer briefly spoke with Driver. He noticed that Driver's eyes were watery and detected an odor of alcohol on Driver's breath. Due to Driver's injuries, including among others a

lacerated forehead and broken femur, Driver was unable to perform field sobriety tests. Shortly after the officer's arrival, Driver was placed on a gurney and transported to St. Anthony's Hospital by EMS personnel. The officer followed in his police car as Driver was transported to the hospital.

Upon his arrival at the hospital, the officer witnessed Driver being treated for his injuries. Driver was at that point heavily medicated, awaiting surgery and unable to talk. Due to his suspicion that Driver had been driving while intoxicated, the officer requested that hospital personnel take a sample of blood from Driver and provide it to him for purposes of determining Driver's blood alcohol content. Driver's consent was not sought due to his medical condition. As the officer watched, a hospital phlebotomist removed two vials of blood from Driver, labeled each with Driver's name and other appropriate identifying information, and gave them to the officer. The officer then took custody of the vials and transported them to the St. Louis County Justice Center for later testing. Prior to leaving the hospital, the officer wrote and issued Driver a citation for Driving While Intoxicated.

On April 27, 1998, a forensic chemist with the St. Louis County Crime Laboratory tested Driver's blood that was contained in one of the vials, and obtained a test result indicating Driver's blood alcohol content was 0.14% (that is, 0.14% grams per 100 milliliters of blood). In accordance with the laboratory's normal procedure at the time, the remainder of Driver's blood was preserved for a week or two after the test, and then discarded. Approximately three months later, Driver's attorney wrote a letter to the Assistant County Counselor to whom Driver's case was initially assigned, requesting that Driver's blood sample be preserved so that he could have an independent expert test done. The blood sample could not be produced since it had previously been discarded.

The Director of Revenue later suspended Driver's driving privileges, pursuant to Section 302.505 RSMo (Cum.Supp.1999),[1] for driving with a blood alcohol content of at least 0.10%. Driver requested and was granted an administrative hearing pursuant to Section 302.530. After the hearing officer upheld the suspension, Driver filed a petition for a trial de novo with the St. Louis County Circuit Court pursuant to Section 302.535.1. His petition was assigned for hearing to a traffic court commissioner pursuant to Section 479.500.

The hearing was held on April 20, 1999. During the hearing, Driver objected to admission of the blood test results on the ground that a duplicate sample had not been preserved so that he could have his own expert test done. This objection was overruled. He also argued that there was no evidence he was ever actually arrested for the alleged D.W.I. offense, and contended that such an arrest is a necessary prerequisite under Section 302.505.1 before the Director is statutorily authorized to suspend his privileges.

At the conclusion of the hearing, the traffic court commissioner entered her findings and recommendation that Driver's petition be denied and that the suspension of his driving privileges be sustained. The presiding judge adopted the findings and recommendation of the traffic court commissioner, as the judgment of the circuit court, on the same day that the commissioner entered her findings and recommendation. On April 23, 1999, Driver first received notice and a copy of the commissioner's findings and recommendation, along with the court's judgment, which were combined together on one standard pre-printed form. Driver immediately filed a motion requesting rehearing before a circuit judge. The motion was denied. This appeal follows.

---

1. All further statutory references are to RSMo Cum.Supp.1999 unless otherwise noted.

## Discussion

In his first point on appeal Driver contends his privileges were suspended without due process because he was denied an opportunity for a meaningful hearing or review before a circuit court judge, in that the court entered its judgment adopting the findings and recommendation of the traffic court commissioner on the same day that the commissioner made her findings and recommendation. Driver bases this contention on the Supreme Court's holding in *Dabin v. Director of Revenue*, 9 S.W.3d 610 (Mo. banc 2000).

In *Dabin* the court determined a challenge to the constitutionality of initially assigning petitions for trial de novo to a traffic court commissioner pursuant to Section 479.500. The court held that this procedure did not impermissibly allow a traffic court commissioner to act as an Article V judge if properly implemented, and hence was not unconstitutional, in that the commissioners were simply making "findings and recommendations" to the circuit court "in the first instance" pursuant to a delegation of administrative authority, and the circuit court itself remained ultimately responsible for entering a judgment after considering the commissioner's findings and recommendations. *Dabin*, 9 S.W.3d at 614. The court in *Dabin* then considered whether Mr. Dabin was afforded procedural due process. *Id.* at 615. It held that due process requires, inter alia, that a driver be given a meaningful opportunity for a hearing or review on the merits of his case before a circuit court judge, which in turn requires that the driver must be allowed a reasonable amount of *time* in which to challenge any adverse findings and recommendations of the traffic court commissioner. *Id.* For this reason, the court in *Dabin* found that due process was violated where the presiding judge had entered judgment based on the traffic court commissioner's findings on the very same day that the commissioner entered those findings. *Id.* Additionally, in *Stiens v. Director of Revenue*, 19 S.W.3d 695,

(Mo.App. E.D.2000), this court held that such a violation is not cured even by the circuit court's giving lengthy consideration to a petitioner's post-judgment motion for rehearing before a circuit judge (unless such motion is granted), because "[d]ue process required that petitioner be given the opportunity to file a motion for hearing by an Article V judge and make his challenges to the commissioner's findings as part of the trial de novo process *before* the Article V judge entered judgment against him." (emphasis in original) *Stiens*, 19 S.W.3d at 698.

It is beyond dispute that in the instant case Driver was not afforded a meaningful opportunity to be heard during the trial de novo process by an Article V judge because, just as in *Dabin*, "the circuit court entered judgment on the same day that the commissioner entered her findings and recommendation." *Id.* at 697.

However, the Director argues that the circuit court did not err "even though it entered its judgment on the same day as the traffic commissioner entered her findings and recommendation" because Driver "waived his right to challenge the judgment on this basis in that he never raised any objection to this procedure before the circuit court." Director points out that although Driver immediately filed his motion requesting rehearing before a circuit court judge as soon as he received the notice of the traffic commissioner's findings and recommendation and the court's judgment, he failed to assert any specific basis therein upon which the requested rehearing should be granted. Relying primarily on *State v. Bizzle*, 500 S.W.2d 259, 263 (Mo.App.1973), Director argues that a party must raise due process violations at the earliest opportunity in order to give the trial court an opportunity to correct its error, and that failure to do so results in a waiver of the issue for purposes of appeal. Thus, Director contends, Driver waived any due process violations in his case by failing to specifically raise this issue in his motion for rehearing.

■ We agree that as a general rule due process violations may not be raised on appeal (except in some cases as a matter of plain error) if they have not first been raised in the trial court at the earliest opportunity. As applied to the facts and circumstances of this case, however, the rule does not result in the waiver that Director claims.

■ Although Driver did not cite specific grounds for the relief requested in his motion for rehearing, it nevertheless is incorrect to say, as Director does, that Driver "never raised any objection" to the procedurally flawed process that was used in his case. Driver's "Motion For Rehearing Before Circuit Judge," in which he requested precisely the relief to which he was entitled, was an "objection" to the flawed procedure. In this sense, it was akin to requesting a jury trial when one is entitled to a jury trial. See *Grimes v. Bagwell*, 809 S.W.2d 441, 444 (Mo.App. S.D.1991). Moreover, it was a timely objection, because Driver filed the motion at the earliest opportunity once he was notified of the commissioner's findings and the court's judgment. Additionally, in this instance the circuit court's expressly stated reason for denying Driver's motion for hearing before a circuit judge—namely, that the court had already adopted and confirmed the findings and recommendation of the traffic court commissioner as its judgment on the same day that the commissioner entered her findings—cites, as the justification for such denial, the very action which deprived Driver of due process in the first place. This indicates that even if Driver's motion had cited the specific basis for the hearing requested therein, it would have been futile to do so. Under these unique circumstances, we conclude that the motion was sufficient to preserve the denial of due process for appellate review even though it did not expressly allege a due process violation, as the law will not require the doing of a useless and futile act. See *Grimes v. Bagwell*, 809 S.W.2d at 444. Point I is granted.

Driver's second point on appeal claims the court erred in admitting the results of his blood alcohol test because he was denied a statutory right under Section 577.020.5 to have his own independent expert perform a test on the blood sample that was seized by police, in that the sample was arbitrarily destroyed by the State after the State performed its test. His third point claims there was no substantial evidence to show he was ever arrested by the officer for the alleged D.W.I. offense in question, and argues that such an arrest is a "necessary prerequisite" to the Director's having statutory authority to suspend his driving privileges under Section 302.505.1. Because of our disposition as to Point I we need not consider these remaining claims, which will be addressed by the trial court on remand.

The judgment is reversed and the case is remanded for proceedings consistent with those required by *Dabin v. Director of Revenue*, 9 S.W.3d 610 (Mo. banc 2000).

ROBERT G. DOWD, Jr., P.J., and MARY RHODES RUSSELL, J., concur.