## FRANK O'NEILL v. STATE OF NEBRASKA.

### FILED MARCH 25, 1921. No. 21523.

1. **Burglary: POSSESSION OF TOOLS: INTENT.** In a prosecution under section 8645, Rev. St. 1913, for the possession or control of burglar's tools, it is not essential to conviction that the instrument is not

susceptible of an innocent use, or is in common use by burglars only. It is the intent with which it is to be used that is the gist of the charge.

2. ————: ————: ————. In such a prosecution it is unnecessary to charge or prove that the intent was to break into any specific building or structure. If the evidence is sufficient to establish a general intent to commit burglary it is sufficient.

3. ————: ————: ————: PROOF. Such intent may be proved by circumstantial evidence, but the circumstances proved must be of such a nature as to exclude the idea of any other than a burglarious intent. A mere conjecture or suspicion will not uphold a conviction.

ERROR to the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Reversed.*

*Jamieson & O'Sullivan*, for plaintiff in error.

*Clarence A. Davis, Attorney General, A. V. Shotwell, W. W. Slabaugh* and *Arthur Rosenblum*, contra.

LETTON, J.

Plaintiff in error was convicted upon an information charging, in substance, that he and four others on December 5, 1919, in Douglas county, had in their possession, and under their custody and control, "a certain instrument or tool, to wit, a pinch-bar, commonly known as a 'jimmy,' and commonly used by burglars for breaking and entering buildings, with the intent * * * unlawfully, feloniously and burglariously to use said instrument or tool, * * * knowing said instrument or tool, to be in general use among burglars for breaking and entering buildings." Many assignments of error are made, but these only will be considered upon which we think the case turns.

O'Neill with the other men accused drove into a garage at Fortieth and Farnam streets in Omaha, between 10 and 11 p. m., to obtain air, oil and gasoline. Two police officers saw them there, and for some reason not shown in the evidence, but perhaps implied by a statement of officer Adams, then made to them, that Gillinsky and O'Neill had gotten away from him once before, stopped them as they were driving out, made them alight, and searched their

persons and the automobile. Nothing incriminating was found on their persons, but, in the recess in the back of the front seat into which a seat folded, four revolvers were found, and a short iron or steel pinch or wrecking-bar was found under the back seat. It is on the possession of the latter implement that the prosecution is based.

Section 8645, Rev. St. 1913, is as follows: "Whoever shall be found having upon him or her, or having in his or her possession, custody or control any picklock, crow, key, bit, or other instrument or tool with intent feloniously to break and enter into any dwelling house, store, warehouse, shop or other building containing valuable property, shall be deemed guilty of a felony," etc.

Several witnesses testified as to the name and nature of the tool or instrument in evidence. It is undisputed that such a tool is a common article of sale in hardware stores and is in general use by carpenters in the demolition of frame buildings. It is flattened at one and at the other end is curved and made in the form of a claw for the purpose of pulling nails and prying. In the trade it is known as a "wrecking-bar" or "pinch-bar." It is also in use by garage and automobile owners for the purpose of removing tires, especially when the tires are frozen. The court instructed the jury that the gist of the offense is having possession of a burglarious implement or tool, with intent to use it for the purpose specified in the statute, and that it was unnecessary to prove that it should be of a character adapted for burglary only; that it is sufficient if it is suitable for the purpose charged. Complaint is made of this instruction, but we think it is a correct statement of the law.

It is assigned that the verdict is contrary to law, contrary to the law laid down in the instructions, and is not sustained by sufficient evidence. The evidence seems to show that the tool is not what is usually termed by police officers a burglar's "jimmy." Before the days of automobiles a "jimmy" was usually of a length that could easily be carried and concealed upon the person; but, since burglars and safe-crackers have taken to the more speedy

and commodious form of locomotion provided by such modern vehicles, the evidence shows that instruments of the form and size of the one in evidence have been used in several burglaries. The fact is that if the instrument was sufficiently described in the information, as we think it was, the exact nomenclature in thieves' jargon is immaterial.

Plaintiff in error has made an interesting review of the various statutes in England and in this country making the possession of burglar's tools a crime, and insists that an information is defective which fails to describe the building which it is the intent of the accused burglariously to enter. Such a construction would practically nullify the statute, unless in the few cases where one of the parties confessed the intention, or where the crime was almost in the act of being committed when the criminals were apprehended. *People v. Edwards,* 93 Mich. 636; *State v. Erdlen,* 127 Ia. 620.

The critical point in the case is with regard to the proof of intent. The story of O'Neill is that it was proposed by Gillinsky, about 10 o'clock p. m., that they go to Benson to play cards; that O'Neill borrowed an automobile which belonged to his nephew; that they met at a restaurant and invited the three others jointly charged to accompany them; that on the way they stopped at the garage where they were arrested; that the pinch-bar was his and had been in use by him as a tire tool and handle for a jack when he ran a taxicab for hire; that he sold the taxicab and loaned his nephew the tool and wrenches he had; that he had not been in the back seat of the car that evening, and had no knowledge that there were any revolvers in the car. On cross-examination he stated that he was not regularly employed, and had been sick most of the winter; that he had been driving his nephew's car as a taxicab three or four times a week, getting to a taxicab stand about 1 p. m. and working until 1 a. m; that before this he had been a bartender for 15 years.

While O'Neill's story seems somewhat improbable, it was not met with any contradiction. It was not shown that

any of these men had ever been accused or convicted of any crime, or had ever been implicated in a crime of like nature to burglary. O'Neill testifies that one is a switchman, one a jewelry salesman, and the other a jewelry engraver, and this is not disproved. No keys, flash lights, bits, nitroglycerine, soap, fuse, or other articles or instruments in common use by burglars or safe-breakers were found. In fact, if engaged in a criminal enterprise, which may not be improbable, the equipment would seem more likely to be intended for use in committing highway robbery than burglary. Four witnesses, a dealer in tires, a furniture manufacturer, a lawyer, and a deputy sheriff, testified that they each carry in their automobiles a wrecking-bar of this nature and use it for removing tires, especially in winter when there is ice between the rim and the tire. That the tool could be used for innocent purposes is not important, because even a spade, a screw driver, or a hammer, may be used as a burglar's tool. Its presence under the automobile seat may be shown to be consistent with an ordinary use by honest men, as tending to explain its possession under the circumstances.

It may be, and probably is, the fact that the police force and perhaps the court and jury were in possession of knowledge which would justify an ordinary mind in the belief that the men were criminals, and that the tool was intended to be used for a burglarious purpose; but convictions must rest upon evidence produced in court, and not upon extraneous knowledge, nor upon suspicion or inferences based upon insufficient grounds. The evidence as to intent was, and of necessity must nearly always be, based upon inferences from established facts, and therefore circumstantial in its nature; but there must be facts enough to justify a belief beyond a reasonable doubt that a burglarious intent existed. The cases in the books show facts much stronger than those in evidence. The evidence of intent is not sufficient to sustain the verdict, which is not in accordance with the instructions of the court.

REVERSED AND REMANDED.

ROSE, J., not sitting.