State v. Hyde.

THE STATE v. D. H. HYDE, Appellant.

Division Two, February 23, 1923.

1. **INTOXICATING LIQUORS: Making and Keeping.** The State has original plenary power to prohibit the manufacture, sale, keeping, storing or transportation of intoxicating liquors, and may enact measures for the enforcement of such legislation.

2. ——: **Search and Seizure: Warrant Issued by Clerk.** Under the statute (Sec. 6595, R. S. 1919, as amended by Laws 1921, p. 416) the clerk of the circuit court, upon affidavit of the prosecuting attorney, but without an order of the court, has no power to issue a warrant for the search of a private dwelling house by the sheriff in which intoxicating liquors are manufactured.

3. ——: **Possession of Manufacturing Utensils: Lard Cans.** A charge in an information that defendant had "in his possession one still, doubler, worm, wormtub, mash-tub and fermenting tub, used and fit for use in the manufacture of intoxicating liquor" is not sustained by proof that he had in his dwelling house three ordinary lard cans full of sour corn-mash, three fruit jars containing corn whisky, and a section of iron pipe upon one end of which was a rag which smelled like a whiskey bottle. The words of the statute, "a still, doubler, worm, worm-tub, mash-tub or fermenting tub," are technical descriptive words, and cannot be construed to mean lard cans or other like culinary articles used in a private dwelling in making whiskey.

4. ——: ——: **Purpose of State.** The statute (Sec. 6588, R. S. 1919) was enacted to make it unlawful for anyone to have in his possession a still, doubler, worm and certain other things used in distilleries and breweries and essential to the manufacture of intoxicating liquors; it does not make the possession of lard cans, tea kettle, coffee pot, or other ordinary culinary household utensil, although used for making corn whiskey or home brew, a crime.

Appeal from Webster Circuit Court.—*Hon. C. H. Skinker,* Judge.

REMANDED.

*G. Purd Hays* for appellant.

The court should have sustained the motion to quash the search warrant and suppress the testimony. Laws 1921, p. 416, sec. 6595. The latter part of said section is that no warrant shall issue to search a private dwelling house and only upon application to a court for good reasons, and not to a circuit clerk. The search warrant does not meet the requirements of the Constitution of Missouri (secs. 11 and 23, art, 2), or of the 4th and 5th amendments to the Constitution of the United States. It does not describe the place or things to be seized as required by law. Youman v. Commonwealth, 224 S. W. 860; State ex rel. American Mfg. Co. v. Anderson, 194 S. W. 268; Secs. 4115, 4116, R. S. 1919; Hughes v. State, 238 S. W. 588.

. *Jesse W. Barrett,* Attorney-General, and *Ellison A. Poulton,* of counsel, for respondent.

(1) The overruling of the motion to quash the search warrant was not error. (2) It was not error to permit the sheriff and his deputies to testify as to what they did and found under and by virtue of the search warrant, nor to allow the articles found to be introduced in evidence. State v. Sharpless, 212 Mo. 176, 196; State v. Pomeroy, 130 Mo. 489, 497; 35 Cyc. 1269 and 1271.

HIGBEE, C.—The first count of the information charges that the defendant, on November 5, 1921, had in his possession one still, doubler, worm, worm-tub, mash tub and fermenting tub, used and fit for use in the manufacture of intoxicating liquor, the possession of said still, doubler, worm, worm-tub, mash tub and fermenting tub

being then and there unlawful and prohibited, etc., following the language of Section 6588, Revised Statutes 1919, as amended (Laws 1921, p. 414). The second count charges the defendant with selling intoxicating liquors contrary to the form of the statute, etc. The court submitted the case to the jury on the first count, but directed a finding of not guilty on the second. The jury returned a verdict finding the defendant guilty on the first count, assessing his punishment at a fine of $250, and finding the defendant not guilty on the second count.

On the day prior to the filing of the information, the prosecuting attorney filed an affidavit with the Clerk of the Circuit Court charging in substance that in the residence of Houston Hyde (the defendant) in Webster County, intoxicating liquors are being manufactured, sold and kept, contrary to the statute, and that in said building "is kept, used, still doubler, worm, worm-tub, mash tub, fermenting tub, vessel and fixtures used and fit for use in the manufacturing and producing intoxicating liquors" and that said dwelling is a public resort and a place in which intoxicating liquors are being manufactured, contrary to said statutes. A search warrant was issued by the clerk to the sheriff who proceeded with his deputies to the defendant's private residence. The sheriff read the warrant to the defendant who invited them into his dwelling where he and his family lived, and told them to look until they were satisfied. The sheriff and his deputies found three ordinary lard cans, of six, ten and twenty gallons capacity, respectively, each full of sour corn mash in a state of fermentation. They also found three fruit jars containing corn whisky, and a section of three-fourths-inch iron pipe, six or seven feet long, concealed between the mattresses of a bed. One end of this pipe had a rag on it which smelled like a whiskey bottle. They also found twenty-five pounds of sugar and a sack of corn chop. The defendant said the corn mash was for his hogs, and the sheriff gave it to them, but took the lard cans and fruit jars containing the whiskey, which were exhibited to the jury at the trial.

This was the substance of the evidence for the State on the motion to quash the search warrant and at the trial.

Before the trial the defendant filed a motion to quash the search warrant, and to suppress and exclude any and all evidence obtained by the sheriff under the warrant, for the reason that the mash tubs, mash, still and intoxicating liquor, if any, were unlawfully seized by said officers at and in defendant's private dwelling house. The court overruled the motion. At the trial, the defendant renewed his objections to any testimony by the sheriff or his deputies as to what they saw, learned or found while executing the search warrant and to the offering in evidence of the lard cans, fruit jars, pipe and whisky seized by the sheriff, which objections were overruled. At the close of the case for the State and again at the close of all the testimony, the defendant demurred to the evidence and prayed the court to direct the jury to find the defendant not guilty. This was refused.

I. Appellant contends that the search of his private dwelling was violative of the constitutional guarantees against unreasonable search and seizure. Our Bill of Rights provides: "That the people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or thing to be seized, as nearly as may be; nor without probable cause, supported by oath or affirmation reduced to writing." [Sec. 11, Art. 2, Constitution of Missouri.]

Our State and Federal constitutions contain guarantees against unreasonable searches and seizures, "The fourth amendment to the Constitution of the United States is not a limitation upon the powers of the State, but operates solely on the federal government." [35 Cyc. 1269.] The State has original plenary power to prohibit the manufacture, sale, keeping and storing or transportation of intoxicating liquors and may enact

measures for the enforcement of such legislation. [United States v. Lanza, 43 S. C. Rep. 141.] "When not prohibited by the Federal or State Constitutions, the Legislature may enact laws authorizing searches and seizures on the conditions and subject to the restrictions prescribed by it." [35 Cyc. 1273.]

Section 6595, Revised Statutes 1919 (Laws 1921, p. 416), provides for searches and seizures on certain terms and conditions. It will be seen, however, that it does not authorize the clerk to issue a search warrant under any circumstances. It expressly provides; "No warrant shall be issued to search a private dwelling occupied as such, unless some part is used as a hotel, store or shop, or for any purpose other than a private dwelling, or upon application to the court good reason is shown that such aforesaid place is used for the purpose of violation of this act, or unless such residence is a place of public resort, or a place in which intoxicating liquors are manufactured." The warrant, therefore, to search the defendant's private dwelling, issued by the clerk without an order of the court, was a nullity.

The defendant was not charged with manufacturing, possessing, giving away or transporting intoxicating liquors. The information charged that he had "in his possession one still, doubler, worm, worm-tub and fermenting tub, used and fit for use in the manufacture of intoxicating liquor," and that the possession of said still, etc., was unlawful and prohibited, etc. The evidence shows that he had in his possession ordinary lard cans, which he used in making corn whiskey.

The court instructed the jury that if they believed from the evidence that the defendant "had in his possession a still, worm, worm-tub, mash tub or fermenting tub used and fit for use in the production of intoxicating liquors, they should find the defendant guilty under the first count," etc.

There was evidence that the defendant made what the witnesses called corn whiskey and that in its production he used corn chops which were soaked, soured and

fermented in ordinary lard cans. It is clear that Section 6588, Revised Statutes 1919, was enacted by the Legislature to make it unlawful for any one to have in his possession a still, doubler, worm and certain other things used in distilleries or breweries and essential in the manufacture of intoxicating liquors. It is a drastic statute; it makes the mere possession, not unlawful possession, of the specific devices or instruments prescribed by the statute, a misdemeanor. These particularly specified things are outlawed. We are of the opinion that by no permissible construction can the language of this statute be so extended as to make the possession of ordinary lard cans come within its purview, even though they may be used in the manufacture of intoxicating liquor. It is unthinkable that the Legislature ever intended that the statute should be construed so as to forbid the use or possession of a tea kettle, coffee pot, lard can, or any other culinary household utensil, simply because it might or could be used for making home brew, "white mule" or the like. The statute penalizes the making of home brews, if intoxicating, but does not penalize the use of the utensil because, forsooth, it may or can be put to such base use. The words used in the statute, "a still, doubler, worm, worm-tub, mash tub or fermenting tub" are technical, descriptive words. It cannot be said that because defendant used a lard can in which to sour his mash, that it therefore was a mash-tub within the meaning of the statute. The word "mash-tub" is used in connection with the words "still, doubler, worm, worm tub and fermenting tub." In accordance with the maxim *noscitur a sociis,* they must be construed in connection with the words with which they are associated, Even general words "must be understood as used in reference to the subject-matter in the mind of the Legislature and strictly limited to it and should also be so limited in their application as not to lead to injustice, oppression, or an absurd consequence." [36 Cyc. 1118, citing State ex rel. v. Fry, 186 Mo. 198, 203.]

The statute under consideration is analogous to Section 3306, Revised Statutes 1919 relative to burglar's

tools. In State v. Oertel, 280 Mo. 129, 134, it was affirmatively shown that the tools found in Oertel's possession were instruments used by burglars and commonly known as burglar's tools. If one were to commit a burglary with an ax, hammer or any tool of iron, commonly used by a blacksmith or carpenter, he would be guilty of burglary, but not of having burglar's tools in his possession.

The conviction is unsupported by any substantial evidence. The judgment is reversed and the defendant discharged. *Railey* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is hereby adopted as the opinion of the court. All of the judges concur.