THE STATE v. HEWITT HEFFLIN, Appellant.—89 S. W. (2d) 938.

Division Two, January 4, 1936.

238

*Meyer & Imbersteg* for appellant.

*Roy McKittrick,* Attorney General, and *Frank W. Hayes,* Assistant Attorney General, for respondent.

ELLISON, J.—The appellant was convicted in the Circuit Court of Gentry County upon a charge of having in his custody and concealed about his person certain alleged burglar's tools, in violation

of Section 4057, Revised Statutes 1929. The jury assessed his punishment at imprisonment in the State penitentiary for a term of three years. His motion for new trial in the circuit court contained numerous assignments of error which are grouped under fourteen points in his brief on this appeal. These challenge the sufficiency of the information, the trial proceedings and evidence; complain of the circuit court's action in overruling a motion to suppress evidence, a motion for a continuance, and a motion to discharge the jury; and assail rulings on the admission and exclusion of evidence, and in giving and refusing instructions.

In outline the evidence presented by the State showed that the appellant and an accomplice named Leslie Wheeler on Sunday morning, February 4, 1934, held up Ogden's Cafe in the suburbs of St. Joseph in Buchanan County with a pistol, taking five slot machines. State Highway Patrolman David Harrison of Bethany was notified by telephone and he and Sheriff Webb of Harrison County set out to patrol State Highway No. 4. They met the appellant and Wheeler, gave chase, and captured them in Albany, the county seat of Gentry County, some fifty miles northeast of the scene of the robbery and about two hours after it occurred. In the Ford automobile of the fugitives were found the slot machines, which they admitted having taken from the Ogden Cafe; also a .45 caliber automatic Colts army pistol, loaded and with trigger cocked; some .45 automatic shells and a leather pistol holster; a dry battery flashlight, called a "peep light;" a prying bar, called a "jimmy;" and a blackjack. The two men were taken back to St. Joseph and charged with the robbery of the slot machines from the Ogden Cafe. The prosecuting attorney of the county dismissed this charge whereupon both the appellant and Wheeler were surrendered to the officers of Gentry County and the instant prosecution was there begun against the appellant for having possession of burglar's tools. It seems that a similar separate charge was filed against Wheeler. Other facts will be stated as necessary in the course of the opinion.

■ I. The information charged the appellant under the prior conviction or so-called Habitual Criminal Statutes, Sections 4461, 4462, Revised Statutes 1929, this part of the charge alleging he had previously been convicted of burglary in Page County, Iowa, and sentenced to ten years' imprisonment in the Men's Reformatory at Anamosa, Iowa; that he was paroled, returned to the reformatory for violation of said parole, and later, in 1931, discharged on expiration of his sentence. The first assignment of error in appellant's brief is that the information was fatally defective in failing to allege "that the appellant was discharged from said institution upon being paroled." This criticism to us is unintelligible. The information substantially followed the language of Section 4461, Revised Statutes 1929, by stating he was discharged on expiration of his

sentence. Why appellant thinks it should have been alleged that he was discharged when he was let out on a parole (not a pardon) which he violated, forcing his return to the reformatory, is more than we can see. The parole did not operate as a discharge and the information need not have said anything at all about it. The assignment obviously is without merit both for this reason and another stated in the next paragraph.

Appellant maintains further that his conviction cannot stand because it was not proven he was discharged from the Iowa penal institution; and it is a fact that the State failed to make this proof and abandoned the prior conviction part of the charge. But it does not follow that the case could not still be submitted under the same information on the charge therein of possessing burglar's tools, or that the jury could not convict him on that charge as a first offender. As has been held several times the Habitual Criminal Statutes themselves do not create a separate offense but merely subject second offenders to heavier punishment for the crimes they commit. [State v. Bresse, 326 Mo. 885, 894, 33 S. W. (2d) 919, 922.] It is well established that though the jury disbelieve the evidence offered to show a prior conviction they can still convict the defendant of the crime charged in the information and assess his punishment in accordance with the statute·applicable thereto in the first instance. [State v. McBride, 334 Mo. 890, 68 S. W. (2d) 688.] And there is no reason why the conviction and punishment cannot follow along in the same way where the prosecutor has abandoned the prior conviction part of the charge. This was done in State v. Jackson, 336 Mo. 1069, 83 S. W. (2d) 87. In other words, it is not vital to a prosecution under an information alleging a prior conviction and discharge, that the pleading and proof on this point be unexceptionable. They go only to the amount of punishment to be inflicted, and the defendant is not entitled to an acquittal merely because the State falls short of the mark in either respect. He can still be punished as a first offender.

II. As stated, when the defendant and Wheeler were apprehended at Albany their automobile was searched and in it were found the slot machines and alleged burglar's tools above mentioned. On the day of the trial in the circuit court the defendant filed a motion to suppress this evidence on the ground that it was obtained by a wrongful search and seizure. The circuit court overruled the motion, and appellant's next assignment of error complains of that ruling. We will not go into the merits of the assignment because the record shows the motion to suppress was filed too late to entitle it to consideration from the trial court. The bill of exceptions and an entry in the record proper brought up both recite the motion was filed "at the close of all the evidence submitted in said cause." Furthermore, the next preceding entry in the record proper shows

the jury had been sworn, all the evidence heard, and the jury had retired under the instructions of the court, before the motion to suppress was filed. At that stage of the case it was clearly out of time. [State v. Jackson, 336 Mo. 1069, 83 S. W. (2d) l. c. 91; State v. Tull, 333 Mo. 152, 160, 62 S. W. (2d) 389, 392.]

III. Error is assigned in the overruling of appellant's application for a continuance. The application was filed the day the case was tried, March 26, 1934. It alleged that the original information in the cause was filed on the first day of the term, March 19, but that appellant's counsel did not receive a copy of it until the next day, March 20; that the names of several witnesses were indorsed on the back of the information, of whom two, Hazel Thompson and R. E. Truman, or Tenman, were unknown to appellant and his counsel; that the name of Truman or Tenman was written in longhand and was illegible; that appellant was not prepared to meet the testimony of these witnesses. The application further alleged that appellant desired to take the depositions of two witnesses in Des Moines, Iowa, by whom he expected to prove the prying bar or so-called jimmy found by the officers in the automobile when he was arrested, was a part of the tool equipment of the car when his companion, Wheeler, purchased it a short time theretofore; that Des Moines is about 130 miles away and he could not, after receiving a copy of the information on March 20, get the depositions in time for the trial on March 26. And third, the application set out that on that day (that is, the day it was filed and the day of trial) the prosecutor had filed an amended information under the Habitual Criminal Statutes on which were indorsed the names of three additional witnesses, N. B. Giles, Ned George and Henry Hopkins. However. these facts were merely stated; the application did not claim surprise because of them. But in the argument on the application appellant's counsel orally did claim surprise on that ground.

We think there was no prejudicial error, if error at all, in the overruling of the application for continuance. There was no substance to the complaint that witnesses Hazel Thompson and R. E. Truman or Tenman, were unknown to appellant and his counsel. Truman was not used as a witness at the trial. Hazel Thompson worked as a waitress at the Ogden Cafe where the alleged slot machine holdup occurred and easily could have been found. As a matter of fact when called by the State as a witness at the trial she testified in favor of the appellant and was not cross-examined by his counsel. With reference to the taking of depositions in Des Moines, the record shows the appellant knew from and after February 16 that he was charged with possessing burglar's tools; he was out on bond and able to gather the facts in his case; he did not complain of the setting of the trial for March 26 until that day came, the State in the meantime having got ready. As to the additional

witnesses whose names were indorsed on the amended information on the day of trial. Of these only Henry Hopkins was used. He was a detective of the St. Joseph police department, and was present when the appellant and Wheeler were brought to police headquarters the day they were captured. He testified about the alleged burglar's tools found in their possession. The trial court was well justified in concluding appellant was not surprised at the use of this witness or unable to anticipate what his testimony would be.

■ IV. When appellant's foregoing application for continuance was presented the prosecuting attorney, E. L. Redman, took the witness stand to oppose it. He testified that on the first day of the term, March 19, he had a conversation with Mr. Imbersteg, one of appellant's counsel, about the instant Hefflin case; told him he would probably file an amended information invoking the Habitual Criminal Statute for the prior conviction in Iowa; and that Mr. Imbersteg said "Well, we will try the Hefflin case Monday morning." The prosecuting attorney went on to say that appellant's counsel could not be surprised by the indorsement of the names of the St. Joseph witnesses on the original and amended information because the same counsel had represented appellant when he was charged in that county with the robbery at the Ogden Cafe. There was some discussion back and forth about this matter in open court and the court overruled the application. This was during the morning session of court.

When the afternoon session began appellant's counsel orally moved that the jury be discharged because the entire panel of twenty-four men had been present in the courtroom and had heard the testimony and discussion on the application for continuance. The trial court overruled this motion and appellant assigns that ruling as error. The ruling of the court was correct. In their motion to the court appellant's counsel did not say they were ignorant of the fact that the jury panel was present during the hearing on the application for the continuance. Presumptively they must have been aware of it since it was something which occurred in open court during the progress of the case. Indeed, the record shows that as soon as the hearing on the application for a continuance was concluded, and before the noon recess, the jury were qualified on *voir dire* examination without objection from appellant. Obviously he could not ask for the discharge of the jury on grounds which must have been known to him when he participated in this selection.

■ V. The substantive charge in the information is that the appellant "did then and there willfully, unlawfully and feloniously have in his custody and concealed about his person a burglar's peep light, a burglar's crow bar, or jimmy, a black jack, a seven-shot

45 Colt automatic U. S. Army revolver, all of which said articles and tools . . . being then and there material implements and mechanical devices adapted, designed and commonly used for breaking into a vault," etc. (here follows an enumeration of the structures named in the statute). The statute, Section 4057, was first enacted as Section 1892, Revised Statutes 1899, and reads as follows:

"Any person who makes, mends, designs or sets up, or who has in his custody or concealed about his person any tool, false key, lock pick, bit, nippers, fuse, force screw, punch, drill, jimmy, bit, or any material implement, instrument, or other mechanical device, whatsoever, adapted, designed or commonly used for breaking into any vault, safe, railroad car, boat, vessel, warehouse, store, shop, office, dwelling house, or door, shutter or window of a building of any kind, shall be guilty of a felony, and upon conviction thereof, shall be punished by imprisonment in the penitentiary for not less than two years, nor more than ten years."

It will be observed that in naming the tools, implements, etc., which come under the statutory ban the section first uses the generic term "tool," next enumerates certain particular tools, instruments, and devices, and then adds the catch-all phrase "or any material implement, instrument, or other mechanical device, whatsoever." Following this is the adjective phrase "adapted, designed, or commonly used for breaking into any vault," etc. But it is evidence that this adjective phrase qualifies all the preceding nouns naming tools, instruments and devices and not alone those in the catch-all phrase; for if this were not so it would be a felony under the statute to make, mend, design, set up, possess, or have concealed about one's person any tool of any sort at all, since the general word tool is used at the outset. Under the maxim *noscitur a sociis* this construction is further borne out by the fact that the tools and devices specifically enumerated immediately thereafter in the section all are of a character adapted, designed and commonly used for breaking into structures named in the statute. [State v. Hyde, 297 Mo. 213, 218, 248 S. W. 920, 922.] From this it follows that the possession of tools, instruments or devices not so adapted, designed or commonly used does not subject the possessor to prosecution under the statute.

(a) This construction of the section is the basis of one of appellant's principal contentions, namely, that the State failed to prove the tools specified in the information were adapted, designed or commonly used for breaking into any of the structures mentioned in the statute. We think the point is well taken as to the flashlight, blackjack and revolver. In this connection it should be stated the evidence showed adhesive tape had been pasted over the glass lens or face of the flashlight leaving only a small aperture through which light would come in a slender beam. Two expert witnesses for the

State testified this was a device employed by burglars so the ray of light could be centered on a safe lock, key hole or other object without illuminating the surrounding space, thereby reducing the hazard of detection. Hence it was called a "peep light." These experts also testified the flashlight, prying bar, blackjack and revolver all were tools *commonly carried and used by burglars.*

This character of evidence seems to have been regarded as sufficient to support a conviction in State v. Layton, 191 Mo. 613, 614, 90 S. W. 724; State v. Oertel, 280 Mo. 129, 138, 217 S. W. 64, 67; and State v. Jarvis (Mo. Div. 2), 228 S. W. 386. In each of these three cases the defendant had in his possession tools for breaking and entering buildings, and in the Layton case also had two revolvers and a dark lantern; in the Oertel case a flashlight; and in the Jarvis case a pistol and two flashlights. The State in each case introduced expert testimony that *all* the tools and instruments thus found in the possession of the defendant therein (which severally included the revolvers, flashlights and lantern), were of a kind and character commonly used by burglars; and the opinions apparently treat this evidence as bringing the cases within the statute. But the point was not made in either of these decisions that a tool to meet the requirements of the statute must be adapted, designed or commonly used *for breaking into* buildings, safes or other structures named in the statutes. Obviously pistols, blackjacks and flashlights are not breaking tools. Burglars may commonly carry them on their burglarious expeditions *while* they are breaking into buildings, etc., but they do not use them *for* breaking and entering. Suppose a criminal when apprehended had in his custody a pistol, or a flashlight or a blackjack alone. Would it be contended that he could be prosecuted under the statute for having in his custody a tool adapted, designed or commonly used for breaking into a building, safe, etc.? We think not.

In State v. Ferrone, 96 Conn. 160, 113 Atl. 452, 97 Conn. 258, 116 Atl. 336; O'Neill v. State, 105 Neb. 824, 182 N. W. 503; People v. Jones, 124 Mich. 177, 82 N. W. 806; and People v. Riley, 63 N. Y. Supp. 18, although the evidence showed the respective defendants each had in his possession a revolver along with certain tools for breaking into buildings, nevertheless the indictment or information in each case charged only possession of the tools and did not include the revolver, evidently because it was recognized that a revolver is not an instrument adapted or designed for breaking into a building, etc. And in State v. Widenski, 50 R. I. 148, 146 Atl. 407, the defendant had a pinch bar, screw driver and flashlight. The court said "the flashlight, while an instrument not adapted or designed for breaking or entering a building, is a very useful adjunct to tools that are so adapted and designed;" and went on to hold evidence was properly admitted showing the defendant's possession of the flashlight because

it had a bearing on the question of his intent to use unlawfully the breaking tools in his possession. Likewise in Regina v. Thompson, 11 Cox's C. C. 362, when the defendant and J were arrested at night the defendant had a candle and lucifer matches and J had a crowbar and knife. The court held that while the candle and matches were not house breaking implements, still they could be taken into consideration as tending to show the purpose to which the crowbar and knife were intended to be applied.

But our holding that the revolver, blackjack and flashlight were not tools adapted, designed or commonly used for breaking into buildings, etc., does not call for a reversal of the case because the appellant also had in his custody a crowbar or so-called jimmy, which clearly was a breaking tool. The State's two experts testified the bar was one adapted to and commonly used by burglars for prying open windows, doors and the like. On the other hand, the appellant proved by a circular issued by the manufacturer of the prying bar that it was made for use in lubricating the spring shackles of an automobile; and it was further shown that prying bars of that type were commonly used by motorists. Appellant's theory seems to be that in order to come within the statute such tools must be especially if not exclusively designed for use by burglars.

The overwhelming weight of authority is against appellant's contention. A leading case on the subject is Commonwealth v. Tivnon, 74 Mass. 375, 380, 69 Am. Dec. 248, 251, where it was said: "Nor do we think it necessary, in order to create the offense which the statute is designed to punish, that it should appear that the tools or implements were originally made or intended for an unlawful use. If they are suitable for the purpose, so that they can be used to break and enter burglariously, it is wholly immaterial that they were also designed and adapted for honest and lawful uses. A chisel or centre-bit, though a tool in common use for ordinary purposes, is quite as efficacious in the hands of a burglar, to carry out his felonious intent, as a jimmy, or a lock-picker, which is made for the sole purpose of being used to break and enter buildings." A number of cases on the point will be found in the annotation in 50 L. R. A. (N. S.) 825.

On the question it was said in State v. Erdlen, 127 Iowa, 620, 621, 103 N. W. 984, "It is undoubtedly true that any one of possible thousands of tools may be used by a burglar in the prosecution of his marauding expeditions. Indeed, it is difficult to conceive that there can be any tools made use of by burglars—from the bungler to the expert—which may not also have a place in the uses of legitimate industry." So, in Commonwealth v. Riley, 192 Ky. 153, 232 S. W. 630, 632, the court said: "We have only to say that the tools or implements and other things in the possession of the defendant, in this

character of prosecution, need not be articles especially manufactured and designed for the use of burglars alone, but they may be any tools, implements, or things which in the language of the statute are 'used by burglars for housebreaking, forcing doors, windows, locks, or buildings,' etc., although they may be such as are adapted for use in the accomplishment of lawful and legitimate purposes. If the language of the statute should be construed so as to require that such tools, etc., should be especially manufactured and designed for burglarious purposes, we doubt if any defendant could ever be convicted under the statute, not only because, as we surmise, that there is no such manufacturing establishment, but also because of the great difficulty which the commonwealth would encounter in proving that fact, to say nothing about the strained construction of the statute which that interpretation would require." [See, also, State v. Widenski, 50 R. I. 148, 146 Atl. 407; State v. Fitzpatrick, 141 Wash. 638, 251 Pac. 875; O'Neill v. State, 105 Neb. 824, 182 N. W. 503; State v. Ferrone, 97 Conn. 258, 116 Atl. 336; People v. Morgan, 13 N. Y. Supp. 448.]

(b) Appellant's next assignment of error raises further important questions of statutory construction, which are closely related to those just discussed. It will be remembered the State was permitted to prove that two or three hours before their arrest the appellant and an accomplice named Wheeler had held up Ogden's Cafe in the suburbs of St. Joseph with a pistol taking five slot machines, and that they were in flight from that robbery when apprehended in Gentry County. State Highway Patrolman David Harrison testified he had been notified by telephone from St. Joseph or thereabouts to be on the watch for the fugitives; and the State's evidence showed that when the appellant and Wheeler were pursued and arrested their Ford automobile was searched, and in addition to the alleged burglar's tools specified in the information the officers found in the car five slot machines, some .45 automatic pistol shells and a leather holster. Appellant contends all this evidence was incompetent and prejudicial. The State maintains it was properly admitted as a part of the *res gestae* and as throwing light on the appellant's intention in having the burglar's tools in his possession.

This presents the question whether the good or bad intent of the possessor of tools banned by the statute is material in a prosecution thereunder. The section makes no express requirement as to the intent of the accused, and says nothing about "burglar's" tools or a burglarious purpose. So far as concerns the instant case it simply provides, on its face, that if any person have in his custody any tool adapted, designed or commonly used for breaking into a house, or other structure mentioned, he shall be guilty of a felony. And by implication this narrow construction of the statute was sanctioned in

Ex parte Roberts, 166 Mo. 207, 65 S. W. 726, not long after its first enactment. In that decision the law was assailed as unconstitutional on the ground that it made it a felony for a person to have in his possession the tools named therein without regard to the intent or purpose for which he had them. This Division of this court upheld the constitutionality of the statute and declared the Legislature had plenary power to pass any law not forbidden by the Constitution whether it operates according to natural justice or not in any particular case. Inferentially this amounted to a concession or holding that the defendant would be guilty of a felony for having possession of any of the tools named regardless of his good or bad intent.

But we are unwilling to say the statute brands as a felon every carpenter or mechanic who carries with him the implements of his trade, or every motorist who goes about this State with an ordinary tool kit in his automobile. For the hammers, saws, chisels, braces and bits, drills, screwdrivers, crowbars and punches, some of which would inevitably be in one or another of all such kits, would be implements adapted, designed or commonly used for breaking into houses, vaults, safes and the like, and therefore would come within the literal terms of the law. In State v. Hyde, 297 Mo. l. c. 219, 248 S. W. l. c. 922, there is an *obiter* statement that an ax, hammer or any tool of iron commonly used by a blacksmith or carpenter, is not a burglar's tool. But they are certainly tools adapted, designed and commonly used for breaking into buildings, and that is all the statute in terms requires. And as we have seen from Commonwealth v. Tivnon, 74 Mass. 375, 69 Am. Dec. 248, and cases cited therewith such tools when possessed with a general burglarious intent are burglar's tools. If, as said in Commonwealth v. Riley, 193 Ky. 153, 232 S. W. 630, we should restrict the application of the statute to tools especially and solely designed for burglars, we would emasculate it.

We have examined the statutes of fourteen other states wherein decisions have been rendered on the point here under discussion, and it appears that in all of them the statute either expressly, or by intendment as construed in such decisions, requires a criminal intent upon the part of the possessor of alleged burglar's tools to use them burglariously or for some criminal purpose.* And considering the

---

\* Davis v. State, 87 Ala. 10; State v. Ferrone, 97 Conn. 258, 116 Atl. 336, 96 Conn. 160, 113 Atl. 452; Lynch v. State (Ga. 1924), 125 S. E. 70; State v. Engler (Iowa), 251 N. W. 88; State v. Erdlen, 127 Iowa, 620, 103 N. W. 984; State v. Kappen, 191 Iowa, 19, 180 N. W. 307; State v. McHenry, 207 Iowa, 760, 223 N. W. 535; Commonwealth v. Riley, 193 Ky. 153, 232 S. W. 630; Johnson v. Commonwealth, 240 Ky. 123, 41 S. W. (2d) 913; Commonwealth v. Tivnon, 74 Mass. 375, 69 Am. Dec. 248; People v. Howard, 73 Mich. 10, 40 N. W. 789: People v. Edwards. 93 Mich. 636, 53 N. W. 778; O'Neill v. State, 105 Neb. 824, 182 N. W. 503: Leonard v. State, 60 N. J. L. 8, 41 Atl. 561; People v. Morgan, 13 N. Y. Supp. 448; State v.

harshness of a contrary construction we think there is enough in our statute to justify us in holding it means the tools and implements referred to therein must be made, mended, possessed, etc., by the accused with the general intent that they shall be used for a burglarious purpose. The statute has always been referred to as the burglar's tool statute. Among other things it forbids a person from having "concealed about his person" any of the tools and devices mentioned, thereby implying something surreptitious in the possession. The tools specifically enumerated are commonly used by burglars. And when the statute says such tools or implements must be adapted, designed or commonly used for "breaking into," vaults, buildings, etc., that must mean breaking with a burglarious intent; for the legitimate operations of a carpenter or locksmith in opening the locked window or door of a building, or a safe or vault, would hardly be called breaking into them.

Ordinarily when an act is made criminal by statute, the existence of a criminal intent is to be regarded as essential, even when not in terms required. [16 C. J., section 42, page 76.] In Young's Rubber Corp. v. C. I. Lee & Co., 45 Fed. (2d) 103, 108, the United States Circuit Court of Appeals was considering Section 396 of the United States Criminal Code, U. S. C. A., Title 18, section 396, making it a crime for any one knowingly to deposit with any express company or other common carrier for interstate carriage, any drug, medicine, article or thing "designed, adapted or intended for preventing conception, or producing abortion, or for any indecent or immoral use." The court pointed out that a literal construction of the statute would prevent the mailing to or by a physician of any drug or device adapted for contraceptive or abortifacient purposes although legitimately prescribed in the proper treatment of a patient, and held such a restrictive interpretation should not be put upon it. It was therefore construed as requiring that a sender of prohibited articles should have an intent that they "be used for *illegal* contraception or abortion or for indecent or immoral purposes."

It has been held in other states that in proving the general burglarious intent of the accused in having house or safe breaking tools in his possession the State will be permitted to show: that he is a burglar, People v. Jefferson, 161 Mich. 621, 126 N. W. 829; that he associates with burglars, Brown v. State, 32 Ohio Cir. Ct. Rep. 93; People v. Howard, 73 Mich. 10, 40 N. W. 789; that he carried the tools secreted in his clothing, People v. Donovan, 216 Mich. 231, 184 N. W. 863; Scott v. State, 91 Wis. 552; that the tools were carried

Hahn, 8 Ohio N. P. 101; State v. Widenski, 50 R. I. 148, 146 Atl. 407; State v. Fitzpatrick, 141 Wash. 638, 251 Pac. 875; Scott v. State, 91 Wis. 552; State v. Boliski, 156 Wis. 78, 145 N. W. 368, 50 L. R. A. (N. S.) 825; Regina v. Thompson, 11 Cox's C. C. 362.

about in an automobile instead of being kept in a shop, State v. Furlong (Iowa), 249 N. W. 132; that he had other tools in his custody which indicated he intended to use the tools with the possession of which he stood charged in the indictment, for a burglarious or criminal purpose, Commonwealth v. Day, 138 Mass. 186; State v. Widenski, 50 R. I. 148, 146 Atl. 407; that the accused had been guilty of recent burglaries and had in his possession the fruits of such burglaries, State v. Kappen, 191 Iowa, 19, 180 N. W. 307; Fennen v. Commonwealth, 240 Ky. 530, 42 S. W. (2d) 744; Commonwealth v. Day, 138 Mass. 186; Commonwealth v. Johnson, 199 Mass. 55, 85 N. E. 188; that everything found in the car or upon the person of any occupant of the car in which the accused was riding when apprehended is relevant and competent evidence, State v. Ferrone, 97 Conn. 258, 116 Atl. 336; and also the fact that the accused resisted and attempted to flee when arrested, People v. Thompson, 53 N. Y. Supp. 497.

In harmony with these decisions the evidence in the instant case showing the appellant's movements shortly preceding his arrest, and the things found in the automobile in which he was riding, undoubtedly was competent, unless it be for this. The above cases say the State may prove the accused has been guilty of recent burglaries. In this cause the proof was that he and Wheeler had just committed a *robbery* and were fleeing with the spoils. In Leonard v. State, 60 N. J. L. 8, where the defendants were charged with having burglar's tools in their possession, the State showed they had previously been convicted of larceny. The New Jersey Supreme Court held the evidence was prejudicially erroneous; that it had ''no evidential effect in the case being tried, except that it had a tendency to manifest that the men in question belonged to the criminal class;'' and that ''the State, for the purpose of showing that the defendant would be likely to commit the crime charged, cannot prove that he committed other crimes, although of a like nature.'' Is this New Jersey case controlling here? We think not. The State's evidence in this case showed the appellant had committed the violent crime of robbery a few hours earlier, inferentially while he had in his possession the tools involved in this prosecution. This evidence was not offered to prove the ultimate fact of his guilt but only as throwing light on his intent in carrying the tools. We believe it was competent.

VI. Another assignment of error is that the court erred in refusing to grant the appellant a continuance for sufficient time to meet and combat the testimony of witnesses Post and Poague, whose names were not indorsed on the information. There is no merit in this assignment.. The statute, Sections 3504, 3544, does not say the State shall not use any witnesses except those whose names have been endorsed on the indictment or information. On the contrary it says ''other witnesses may be subpoenaed or sworn by the State.'' In this

case the witness Post was the cook at Ogden's Cafe from which the slot machines were taken and the witness Poague was sargeant in charge of zone headquarters of the State Highway Patrol at St. Joseph. The undisputed testimony of the State was that appellant's counsel in this case had also represented him in the robbery case and that they were familiar with what these witnesses would swear to. There is nothing to show any unfairness to the appellant in permitting the witnesses to testify.

■ VII. Error is assigned in that the court permitted the prosecuting attorney to cross-examine the witness Hazel Thompson, who was called and sworn as a witness for the State. We see nothing in the record indicating that the court abused its discretion in this matter. The witness was a waitress in the Ogden Cafe. She denied that the appellant and Wheeler used a revolver when they took the slot machines. The State's witness Post, cook at the cafe, said the revolver was used. The record indicates the prosecuting attorney was surprised. But aside from all this the witness withstood the prosecuting attorney's so-called cross-examination and her testimony in effect was favorable to the appellant. For this reason alone there was no prejudicial error.

■ VIII. Finally it is urged that the conviction must be reversed because the record fails to show an arraignment and a plea of not guilty by the defendant. Section 3615, Revised Statutes 1929, provides "that no judgment rendered in any criminal case shall be reversed, set aside, or for naught held for the reason that the record does not show that the defendant was arraigned and a plea of not guilty entered, where a trial was had in all respects as though the defendant had been arraigned and had formally tendered the general issue under a plea of not guilty." The record does show that the trial was had in this case as if the foregoing formalities had been observed.

The other assignments made by appellant are not properly preserved in the motion for new trial or have not sufficient merit to call for discussion.

Finding no reversible error the judgment and conviction are affirmed. All concur.