Rosenberry, C. J.
 

 The defendant was prosecuted under sec. 343.131, Stats., which provides:
 

 “Possession of burglarious tools.
 
 Any person who shall knowingly have in his possession any nitroglycerin, or other explosive, thermit, engine, machine, tool, implement, device, chemical, or substance designed and adapted for cutting, or burning through, forcing, or breaking open any building, room, vault, safe, or other depository, knowing the same to be designed and adapted for such purpose, with intent to use or employ the same therefor in order to steal from any building, room, vault, safe, or other depository any money or other property, shall be punished by imprisonment in the state prison not more than ten years or in the county jail not more than one year, or by fine not exceeding one thousand dollars, or by both such fine and imprisonment.”
 

 The principal contention made by the defendant in this court is that the evidence offered and received in the case is not sufficient to support the finding and judgment. It appears that the defendant is a man twenty-four years of age, married but separated from his wife and child and now living with his parents. From 1938 to 1943 he was employed by one Kesselman, a contractor. Thereafter, until December 1, 1943, he was einployed as a machinist or turret-lathe operator in the plant at the Allis-Chalmers Company. Since that time
 
 *483
 
 he has been a salesman for the Watkins Company. For some six months or so prior to his arrest, the defendant had been associating with one Lorraine Lahmayer, also employed by the Watkins Company. On the night of February 3, 1944, the defendant went to the home of Miss Lahmayer about 5 :30 o’clock in the afternoon. She and he testified that at her request he fixed a glove compartment in her car. After lunch at her house the defendant and Miss Lahmayer went to a neighborhood movie, remained until about midnight when they returned to her home where she made a light lunch. He left about 3 :30 a. m., on the morning of February 4th.
 

 Shortly after 4 a. m. on that day, the defendant was arrested by the police. He had upon his person at the time of his arrest a small bakelite screw driver, a small fountain-pen-type flashlight, and a small steel hammer. When he left the home of Miss Lahmayer he drove away in her car. Some time-prior to this the defendant had owned a Packard car which he disposed of. Thereafter he used her car and transferred from the Packard car to her car some tools. In the glove compartment of her car was found a carpenter’s chisel 8 ¿4" in length, the metal part being 4J4" long and an inch in width, a burr scraper 7" in length, the blade of which was 5/8ths of an inch in diameter, the handle 4 5/8ths inches long, a small stone of carborundum type 3" in length, 7/8ths of an inch in width and a quarter of an inch in thickness, an ordinary type of screw driver' 8^4" in length, the blade of which was 3^4" long, the remainder being the handle, the width of the blade about 3/8ths of an inch. The defendant consented to the examination of the car.
 

 Shortly prior to the arrest, Officer William Nauertz and Sergeant LeRoy Spaude were at the intersection of Twenty-Seventh and Hopkins streets when they observed a car which subsequently proved to be the car driven by the defendant. This car cruised about in that vicinity- in a manner which
 
 *484
 
 seemed to the officers suspicious. The car was finally parked on the east side of Twenty-Seventh street between Townsend ami Keefe avenue. After inspecting the car and failing to find the defendant, the officer went to a police-call box to call the operator for identification of the car, at which time he saw the defendant and called the defendant to him and questioned him. When asked where he came from the defendant said that he came from Sixteenth and Lloyd streets and was looking for a hamburger joint. The defendant made some false statements but produced from his pocket the steel hammer, a flashlight, and a bakelite screw driver. He lied to the officers as to his whereabouts between midnight and the time of his arrest, claiming that he had taken a friend to the North Shore depot on Sixth and Michigan streets. Pie admitted his statement was false but alleged it was done to protect Miss Lah-mayer.
 

 There is some evidence in the case that a burglary was committed in the office of Mr. Kesselman in November. The officers also testified that there was found in the glove compartment of the car a No. 51 Parker fountain pen, upon which was the name, L. M. Kesselman, but the pen was not offered or received in evidence and the defendant denied that he placed the pen in the car. The most suspicious circumstance in connection with the operation of Miss Lahmayer’s car by the defendant was that he left the car parked and went about the neighborhood afterward claiming to the officers that he was looking for a hamburger stand. The officers observed him in an alley and he did not give a satisfactory account of his movements when questioned. We cannot set out all of the details. We have, however, stated those which are most significant.
 

 The question Is, Do these facts support the finding of guilty ? Sec. 343.131, Stats., makes it an offense for a person knowingly to have in his possession a tool designed and adapted for cutting or burning through, forcing, or breaking
 
 *485
 
 open a building, room, vault, etc., with the intent to use or employ the same for that purpose in order to steal from any building, room, vault, etc. There was found upon the person of the defendant a small screw driver, a pencil-type of flashlight, and a small metal hammer. There was found in the car a chisel, a burr scraper, a small stone evidently a whetstone of carborundum type, and an ordinary type of screw driver 8 long, including the handle. It is considered that these simple tools are not tools designed and adapted for cutting or burning through, forcing, or breaking open a building, room, or vault within the meaning of those terms as used in sec. 343.131.
 

 In
 
 Scott v. State
 
 (1895), 91 Wis. 552, 65 N. W. 61, it was held that where the defendant had upon his person at the time of .his arrest two small drills, two large drills, three skeleton keys, and other implements, was sufficient to sustain a conviction under the statute where there was testimony to the effect that for a complete burglars’ outfit used in blowing safes, drills, skeleton keys, hooks, etc., would be sufficient, it appearing that the only necessary implement lacking was a brace which was ordinarily acquired on the premises.
 

 In
 
 State v. Boliski
 
 (1914), 156 Wis. 78, 145 N. W. 368, it was held that a bottle of nitroglycerin and a fuse and detonating cap, though not actually in combination when found in the possession of the defendant, constituted a—
 

 “machine, tool or implement designed and adapted for . . . forcing or breaking open any building, room, vault, safe or other depository."
 

 In
 
 State v. Hefflin
 
 (1935), 338 Mo. 236, 89 S. W. (2d) 938, 103 A. L. R. 1301, it was held that one could not be convicted of having in his possession burglars’ tools upon proof of possession of a peep light, blackjack, and revolver, but if in addition to these he had in his possession a jimmy, a conviction would be sustained. Appended to this case is
 
 *486
 
 an annotation in which the cases are analyzed and discussed.. For a.case where the court held that it appears as a matter of law that the implements in the possession of the defendant were implements of housebreaking, see
 
 State v. Vick
 
 (1938), 213 N. C. 235, 195 S. E.
 
 779.
 
 In that case the officers found in the possession of the defendant and his associate an ink bottle full of nitroglycerin, soap, eye dropper, nine dynamite caps, dynamite fuse, pistol cartridges, a double-barrel shotgun, a single-barrel shotgun, and a sawed-off shotgun, ( a pair of bolt clippers, a sledge hammer, cold chisel, and pistol cartridges.
 

 It is considered upon reason and authority that it cannot be said that the possession by the defendant of the hammer, flashlight, and bakelite screw driver brought him within the provisions of sec. 343.131, Stats. His possession of the hammer was accounted for by the fact that he had repaired some part of Miss Lahmayer’s car previous to going to the movies. It appears that he took off his mackinaw and put on a leather jacket which was kept at the Lahmayer place, which he thought was more dressy to go to the movies. When they returned to her home he changed back to the mackinaw he had on when he repaired the car. The tools found in the car, even if held to be in defendant’s possession, were of the same type as those found on his person.
 

 It may well be that under some circumstances simple tools may be brought within the statute but this is not such a case.
 

 .
 
 By the Court.
 
 — The judgment and sentence of the trial court is reversed, and cause is remanded with directions to the trial court to discharge the defendant.