**STATE of Missouri, Respondent,**

v.

**Tony EMERY, Appellant.**

**No. WD 30908.**

Missouri Court of Appeals,
Western District.

Dec. 30, 1980.

Lee M. Nation, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Earl W. Brown, III, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P. J., SWOFFORD, J., and HOUSER, Senior Judge.

PER CURIAM:

Appellant after a jury trial was convicted of possession of burglar's tools in violation of § 560.115, RSMo 1969, and was sentenced, in accordance with the verdict of the jury, to two years' imprisonment. From this conviction appellant has appealed to this court.

Appellant puts forward three alleged points of error upon which he relies for reversal of his conviction. We shall take up the three points in order.

The first point is that the statute under which he was convicted, § 560.115, RSMo 1969, was unconstitutional under the Due Process Clause of the Fourteenth Amendment, because of its vagueness, and that the trial court erred in denying his motion to dismiss based upon that ground.

The statute (now repealed and replaced by § 569.180, RSMo 1978) reads as follows:

> Any person who makes, mends, designs or sets up or who has in his custody or concealed about his person any tool, false key, lock pick, . . . drill, . . . or any material implement, instrument or other mechanical device whatsoever, adapted, designed or commonly used for breaking into any vault, safe . . . warehouse, store . . . dwelling house . . . shall be guilty of a felony . . .

Appellant's precise criticism of this statute is that it fails to require proof of burglarious intent on the part of the possessor of the offending tools. He says that the statute by its terms punishes the innocent possession of tools which might be used for burglary, but which are commonly used for lawful purposes. The statute is therefore overbroad, catching both the lawbreaker and the law-abiding citizen in its net. It "does not give fair notice to the individuals of the conduct which is prohibited and because it makes possible erratic and arbitrary enforcements". Defendant acknowledges that burglarious intent is an element of the crime which the courts have held must be proved by the state, *State v. Hefflin*, 338 Mo. 236, 89 S.W.2d 938 (1936), but he says that, since the statute itself does not set out the burglarious intent require-

ment, it is not rescued from unconstitutional vagueness and overbreadth by the court's supplying that requirement.

■ Appellant's attack upon the statute must be rejected, for the statute itself does require proof of burglarious intent on the part of the possessor of the tools. The requirement of the proof of burglarious intent under this statute was not added by the *Hefflin* court out of thin air, as a matter of judicial fiat, but was found by the court in the language of the statute itself. Note the court's language:

> . . . [W]e think there is enough in our statute to justify us in holding it means the tools and implements referred to therein must be made, mended, possessed, etc., by the accused with the general intent that they shall be used for a burglarious purpose. The statute has always been referred to as the burglar's tools statute. Among other things, it forbids a person from having "concealed about his person" any of the tools and devices mentioned, thereby implying something surreptitious in the possession. The tools specifically enumerated are commonly used by burglars. And when the statute says such tools or implements must be adapted, designed, or commonly used for "breaking into," vaults, buildings, etc., that must mean breaking with a burglarious intent; for the legitimate operations of a carpenter or locksmith in opening the locked window or door of a building, or a safe or vault, would hardly be called breaking into them. *Id.*, 89 S.W.2d at 945–946.

If the statute does require proof of burglarious intent, as was held in *Hefflin*, then appellant's argument falls. The trial court did not err in overruling appellant's motion to dismiss. *See also State v. Hart*, 200 Kan. 153, 434 P.2d 999 (1967); Annot., "Validity, Construction, and Application of Statutes Relating to Burglars' Tools," 33 A.L.R.3d 798, 809–812 (1970).

Next appellant claims that the evidence was insufficient to support the conviction. It now becomes necessary to recount the evidence tending to support the verdict.

State's witness Gary Dougan, about 9:15 o'clock p. m. on July 3, 1977, had driven his tractor to a point on his farm near the Martin-Marietta quarry operation. North of the quarry scale house he saw "three objects" running. Driving his tractor closer, dismounting and climbing on top of a rock pile to get a better view, he "saw one person come out from some trees and then run back to the trees". He also saw a car parked a quarter-mile from the scale house behind a pile of gravel, in an area where cars were not normally parked. It was a 1964 Ford, blue in color with a white top.

A little before 10 o'clock, Dougan, along with Larry Cruth and Dwight Dozier, employees of the quarry whom he had contacted, went to the quarry. They examined the scale house and found that it had been broken into. A radio and a band-aid box were missing, and the pop cooler door had been pried open. They called the sheriff from the scale house. As they were waiting for the sheriff to arrive, the blue and white car which Dougan had seen earlier at the quarry, came by the quarry twice traveling in opposite directions. Once when the car went by, Dozier hurried to the south gate of the quarry to try to stop it. The gate was closed and he couldn't get through, but he did see there were three people in the car, two in front and one in the rear. Deputy Sheriff Danny Estes arrived on the scene. He called the police department at Maryville and gave a description of the car. Before they left the scale house they received a telephone call that Trooper Weyer had the car stopped near Maryville. Maryville was 13 miles from the quarry.

Highway Patrolman Weyer said that when he stopped the car, at about 11 o'clock, defendant Tony Emery was in the back seat. A man named Dennis Ray was driving and Bob Lewis was a passenger in the front seat. In the floor of the back seat was a hand ax and a metal bar. He left the three men in their car and returned to his own car. He described the following movement of defendant: "He leaned forward and moved his hand forward like this and I could see a general movement of his upper

body". When Weyer looked into the vehicle again the ax was still where it had been, but the bar was not visible. The iron bar, described as a "long iron pry tool" was later found under the back seat cushion of the car. A later search also disclosed three pairs of leather gloves, a pair of pliers and the hand ax or hatchet, earlier described.

Mr. Buel, the forensic analyst of the Missouri Highway Patrol, testified that a comparison of the bar with the marks on the Coke machine and on the door jamb indicated that the marks had been made by the bar in question.

Some footprints were located at the scene of the crime. After the defendant and his companions were put in jail, the officers took their shoes. The soles of defendant's shoes had been torn off and were never located. A fragment of rubber found in the tank of the stool in Emery's cell was identified by the forensic analyst as having come from his shoes.

The car was registered in the name of Bob Lewis. Ray and Lewis were known to the police as burglars, and Ray had been convicted of burglary.

Defendant argues in particular that the evidence was insufficient to show his possession of the tools, and insufficient to show his burglarious intent.

■ The circumstantial evidence, however, is sufficient to show both these elements. The jury could well have found that there were three persons engaged in clandestine activity when first observed at the quarry by witness Dougan; that those three persons were the occupants of the blue and white car which was at first suspiciously hidden from view behind a rock pile, and observed driving along the road in that vicinity within minutes afterward; that the same three persons still occupied the car when it was stopped by Trooper Weyer near Maryville about an hour later; that the bar which had been used in the break-in was lying at defendant's feet in the back seat of the car; that defendant himself took the bar and placed it under the back seat; and that defendant was associating

with known burglars in the persons of Lewis and Ray. There is plenty here from which it could be found that defendant was in joint possession with Lewis and Ray of the burglar tools, and that the possession was with a burglarious intent.

Defendant cites to us cases which hold that a joint occupier of premises—residences in the cases cited, rather than automobiles—cannot be held to be in unlawful possession of contraband property found therein, unless there is something more than joint possession or occupancy of the premises to connect the defendant with the contraband and inculpate him. *State v. McGee*, 473 S.W.2d 686 (Mo.1971); *State v. Lowe*, 574 S.W.2d 515 (Mo.App.1978).

In our own case, though, the circumstances mentioned above do tend to show a knowing possession of the tools by the defendant, and to negate his innocent presence in the automobile. The *McGee* and *Lowe* cases are inapplicable and the evidence is sufficient to support the conviction. *State v. Watson*, 386 S.W.2d 24, 31–32 (Mo. 1964).

■ Appellant's final point is that the court erred in admitting evidence that Dennis Ray and Bob Lewis, the two occupants of the car with the defendant, had reputations as burglars and that Ray had been convicted of burglary. Appellant acknowledges that, on the issue of his intent evidence would be admissible that he associated with known burglars and thieves, *State v. Hefflin, supra; State v. Watson, supra*, but argues that defendant is not shown to have been an associate of Ray and Lewis. The fact that defendant was circumstantially shown to be in the company of Lewis and Ray at the quarry, riding about with them in the vicinity of the quarry, and still with them at the time of the arrest an hour or so later, is a sufficient association of the defendant with Lewis and Ray to justify, on the issue of defendant's burglarious intent, the admission of evidence that Lewis and Ray were known to the police as burglars, and that Ray had been convicted of burglary. *State v. Lorts*, 269 S.W.2d 88, 90 (Mo. 1954).

The judgment is affirmed.