UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4539

LARRY SMITH, a/k/a Sean Edward
Purdy, a/k/a Larry Kimble Smith,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CR-96-457-A)

Argued: September 25, 1998

Decided: November 10, 1998

Before NIEMEYER and WILLIAMS, Circuit Judges, and
MAGILL, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Dale Warren Dover, Alexandria, Virginia, for Appellant.
Heather Robin Epstein, Special Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Vir-
ginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attor-

ney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Larry Smith was convicted of possessing a burglarious tool in violation of 18 U.S.C.A. § 13 (West Supp. 1998), assimilating Virginia Code § 18.2-94 (Michie 1996), and sentenced to four months imprisonment.[1] Smith now appeals his conviction on the grounds that § 18.2-94 is unconstitutional and, in the alternative, that there was insufficient evidence that he possessed the tool in question, a slim jim, with criminal intent. Finding no error, we affirm.

I.

On November 3, 1996, United States Park Police Officers Anthony Ditoto and George Madden (the Officers) were on horseback patrolling the parking lot at the Great Falls National Park (the Park), which is located within the Eastern District of Virginia. Because a series of larcenies had recently occurred in the Park's parking lot, the Officers

_____

[1] While his appeal was pending before this Court, Smith completed his four-month term of imprisonment. This appeal, however, is not mooted by the completion of Smith's sentence. See, e.g. , Carafas v. LaVallee, 391 U.S. 234, 237-38 (1968) (holding that the expiration of petitioner's sentence while his conviction was awaiting appellate review did not moot the appeal because petitioner had substantial interest in discharging burdens that flowed from conviction). Because of the collateral consequences of a conviction, e.g., loss of voting privileges, a defendant has "a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him." Fiswick v. United States, 329 U.S. 211, 222 (1946).

paid particularly close attention to the people entering and exiting the Park that day. At approximately 2:00 p.m., the Officers observed a Ford Thunderbird occupied by Larry Smith and driven by Smith's companion, Charles Fry, slowly enter the parking area. As the vehicle drove past the mounted patrol, Smith and Fry waved at the Officers. Unsure if he knew the individuals in the vehicle, Officer Ditoto made a mental note of the vehicle's license plate number.

Shortly thereafter, the Officers stabled their horses and returned to the parking lot -- where Fry's car was now parked-- in an unmarked patrol car to investigate. Officer Ditoto approached the unoccupied car and, looking through the window, observed opened and unopened alcoholic beverage containers. The Officers then observed Fry walking in front of a row of parked cars, stopping to look inside the cars. As Fry was looking inside the cars, he noticed one of the uniformed Officers behind him. Fry nervously looked over his shoulder several times at the Officers. The Officers then observed Fry walk over to where Smith was standing, and while Fry and Smith talked, they repeatedly glanced at the Officers.

Officer Ditoto decided to approach Smith and Fry and inform them of the alcoholic beverage violation. The Officers called out to Smith and Fry, requesting that Smith and Fry approach them. Fry complied with the Officers' request, but Smith continued to walk away. Officer Madden ran after Smith, who continued to ignore Officer Madden's requests to stop. Finally, Officer Madden placed his hand on Smith's shoulder in order to stop him. When Officer Madden finally stopped Smith, Smith immediately stated that he was only jogging. Officer Madden testified that he was taken aback by Smith's spontaneous explanation.

Smith and Fry were instructed by the Officers to sit on a log and produce identification. Neither Smith nor Fry had identification and, when asked about their identity, both gave false names. In response to questioning, Smith also gave a false address, date of birth, and social security number. The Officers placed Smith and Fry under arrest for possession of alcoholic beverages in the Park.[2] See 36 C.F.R. § 4.14(b) (1998). The Officers then conducted a search of

_____

[2] This charge was ultimately dismissed.

3

Smith and Fry incident to the arrest. When Officer Ditoto "patted down" Smith, he found an open slim jim hidden in Smith's pants.

In December 1996, Smith was indicted by a federal grand jury on one count of possessing burglarious tools in violation of 18 U.S.C.A. § 13 (West Supp. 1998), assimilating Virginia Code § 18.2-94 (Michie 1996). At trial, the Government introduced evidence that a slim jim is a tool specifically used to gain entry into an automobile without using a key. In fact, Officer Ditoto testified that because of its special function, police officers, firemen, and automobile assistance organizations, such as AAA, are authorized to carry and use slim jims.

In his defense, Smith offered the testimony of his employer, John Routzahn, who testified that Smith had worked for him as a roofer for approximately eight years. Routzahn further testified that a slim jim, if it had a handle, would be the functional equivalent of a slate ripper, a tool used to pull slate shingles off of a roof for repair. Routzahn stated, however, that his roofing company does not have a roofing contract with the federal government or with the Great Falls National Park.

After a jury trial, Smith was convicted of possession of a tool with intent to commit burglary, in violation of 18 U.S.C.§ 13, assimilating Va. Code Ann. § 18.2-94. Smith was sentenced to four months imprisonment and ordered to pay a $10 special assessment. On appeal, Smith contends that Va. Code Ann. § 18.2-94 is unconstitutional and, in the alternative, that there was insufficient evidence that he possessed the slim jim with criminal intent. [3] We address each argument in turn.

_____

[3] Smith also contends that the Government impermissibly commented during its closing argument on Smith's exercise of his Fifth Amendment right not to testify. (Appellant's Br. at 10.) Other than Smith's cursory assertion in his appellate brief, Smith failed to brief this argument on appeal. As a result, the issue is not properly before the panel. See Canady v. Crestar Mortgage Corp., 109 F.3d 969, 973 (4th Cir. 1997) (holding that issues raised, but not briefed, are deemed waived on appeal). In any event, because Smith did not raise this issue in the district court, appellate review would have been for plain error under Fed. R. Crim. P. 52(b). See United States v. Olano, 507 U.S. 725, 732-34 (1993) (finding that error must be plain under current law, affect substantial rights, and seriously affect fairness, integrity, or public reputation of judicial proceedings). We cannot find anything in the Government's closing argument that seriously affected the fairness of Smith's trial.

4

II.

Smith contends that Va. Code Ann. § 18.2-94 (Michie 1996) is unconstitutional on two distinct grounds.[4] First, Smith argues that because § 18.2-94 contains a presumption that possession of a burglary tool is prima facie evidence of intent to commit burglary, the statute impermissibly relieves the Government of its burden to prove each element of the offense beyond a reasonable doubt. Second, Smith argues that because § 18.2-94 fails to define the term "burglarious tool," the statute is void for vagueness. For the reasons that follow, we find both contentions to be without merit.

A.

Section 18.2-94 provides as follows:

> If any person have in his possession any tools, implements or outfit, with intent to commit burglary, robbery or larceny, upon conviction thereof he shall be guilty of a Class 5 felony. The possession of such burglarious tools, implements or outfit by any person other than a licensed dealer, shall be prima facie evidence of an intent to commit burglary, robbery or larceny.

Va. Code Ann. § 18.2-94. Thus, although the Government must prove beyond a reasonable doubt that Smith (1) possessed a burglarious tool, and (2) intended to use that tool to commit a burglary, the statute allows the jury to presume an intent to commit burglary from the mere possession of burglarious tools. According to Smith, the issue here is whether a statute may, consistent with the Constitution, make proof of one element presumptive or prima facie evidence of another element. Such a question is subject to de novo review. See Multi-

_____

[4] This Court, pursuant to 28 U.S.C.A. § 2403 (West 1994), notified the Virginia Attorney General that Smith's appeal raised a challenge to the constitutionality of a Virginia Statute. In response, the Commonwealth of Virginia filed an amicus brief defending the constitutionality of Va. Code Ann. § 18.2-94 (Michie 1996). We thank the Commonwealth for its participation.

Channel TV Cable Co. v. Charlottesville Quality Cable Corp., 65 F.3d 1113, 1123 (4th Cir. 1995).

We need not decide whether the presumption contained in § 18.2-94 is constitutional, however, because the Government proved its case without the benefit of the presumption.[5] Indeed, the jury was never instructed that possession of a burglarious tool was prima facie evience of an intent to commit burglary. Rather, the district court instructed the jury that it must find, beyond a reasonable doubt, that Smith (1) possessed a burglarious tool and (2) intended to use that tool to commit a burglary. See Carter v. Commonwealth, 290 S.E.2d 865, 866 n.2 (Va. 1982) (noting that the statute may be enforced without the use of the presumption). The validity of the presumption, therefore, has no bearing on Smith's conviction. See, e.g., United States v. Posey, 864 F.2d 1487, 1491 (9th Cir. 1989) (noting that a criminal defendant is not entitled to relief simply because some possible application of the statute violates the Constitution).

Although Smith concedes, as he must, that the jury was not specifically instructed on the presumption here, he contends that the Government's closing argument was the functional equivalent of the burden shifting instruction found in the statute. (Appellant's Br. at 9-10.) Despite Smith's contentions, the Government did not inform the jury of the presumption during closing arguments. During closing argument, the Government simply posed a series of questions to the jury, including: "Why did Smith have the slim jim? Why did he go jogging with a slim jim? . . . Why would he have it out there? Why did he provide a false name to the officers? Why did he give the officers a false birth date, a false Social Security number, and a false place of residence?" (J.A. at 122.) Because intent may be inferred from a defendant's conduct, the Government simply reminded the jury of those facts from which it could reasonably conclude that Smith possessed the slim jim with the intent to commit a larceny.

_____

[5] As both the Government and the Commonwealth note, the constitutionality of § 18.2-94 was squarely addressed and sustained in Burnette v. Commonwealth, 75 S.E.2d 482, 485 (Va. 1953), and Nance v. Commonwealth, 124 S.E.2d 900, 903-04 (Va. 1962).

6

B.

Smith also argues that the statute's failure to define the term "burglarious tool" renders the provision void for vagueness. In particular, Smith contends that the term could apply to several everyday, commonplace items, thus exposing law-abiding citizens to criminal liability. This result would be constitutionally impermissible, Smith argues, because it would subject citizens to the unbridled discretion of the police. Whether Va. Code Ann. § 18.2-94 is void for vagueness is a legal question subject to de novo review. See Roach v. West Va. Regional Jail & Correctional Facility Auth., 74 F.3d 46, 48 (4th Cir. 1996).

"Due process requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal, for `no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" Buckley v. Valeo, 424 U.S. 1, 77 (1976) (quoting United States v. Harriss, 347 U.S. 612, 617 (1954)). Thus, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983); see also Grayned v. City of Rockford , 408 U.S. 104, 108-09 (1972).

We cannot say that § 18.2-94 is unconstitutionally vague. In fact, the statute is rather specific as to what conduct is prohibited: the possession of a tool coupled with the intent to use the tool to commit a burglary, robbery, or larceny. As such, a person of ordinary intelligence would understand what conduct is illegal. Similarly, law enforcement is simply not vested with the unrestrained power to arrest anyone possessing tools that could be used in a legal trade or business. The police may only make an arrest under the statute if the tool is possessed with the requisite criminal intent. Not surprisingly, other courts have upheld similar statutes against vagueness challenges. See, e.g., Hogan v. Atkins, 411 F.2d 576, 577-78 (5th Cir. 1969) (per curiam); People v. Gurule, 924 P.2d 1164, 1166-67 (Colo. Ct. App. 1996); State v. Emery, 610 S.W.2d 698, 699 (Mo. Ct. App. 1980); State v. Briner, 255 N.W.2d 422, 423 (Neb. 1977); Hogan v. Atkins,

7

162 S.E.2d 395, 396 (Ga. 1968); State v. Jerrel , 436 P.2d 973, 975 (Kan. 1968); State v. McDonald, 445 P.2d 345, 348 (Wash. 1968); Shafer v. State, 381 S.W.2d 254, 261 (Tenn. 1964); Goldstine v. State, 126 N.E.2d 581, 583 (Ind. 1955); Mahar v. Lainson, 72 N.W.2d 516, 519 (Iowa 1955). Because the statute neither leaves an individual of ordinary intelligence with difficulty in discerning the prohibited conduct, nor encourages arbitrary enforcement by the police, it is not impermissibly vague.

III.

Finally, Smith contends that there was insufficient evidence that he possessed the slim jim with criminal intent. Instead, Smith argues that the evidence established that he used the slim jim in his employment as a roofer. When assessing the sufficiency of the evidence of a criminal conviction on direct review, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." See Glasser v. United States, 315 U.S. 60, 80 (1942).

Under the statute, the Government must prove beyond a reasonable doubt that Smith: (1) had in his possession any tool, implement, or outfit that might be used to commit burglary, robbery, or larceny; and (2) intended to use such tools, implements, or outfit to commit burglary, larceny, or robbery. See Va. Code Ann. § 18.2-94 (Michie 1996). At issue here is the second element, whether Smith intended to use the slim jim to commit larceny. We conclude, for the reasons that follow, that there was sufficient evidence for the jury to find that Smith possessed the slim jim with the intent to commit larceny.

The Officers observed Smith and his companion, Fry, in a parking lot where numerous larcenies had occurred in the recent past. Smith's companion was observed looking into the windows of parked vehicles while Smith looked on with a slim jim -- a tool designed specifically to gain entry into a locked vehicle without using keys -- secreted down his pants. When Smith realized that he and his companion were being observed by the Officers he began to act nervously. Smith attempted to evade the Officers when they asked him to stop. After finally being stopped, and prior to any questioning by the Officers, Smith stated that he was jogging. Smith was unable to produce identification and, when questioned by the officers, gave a false name,

8

address, date of birth, and social security number. See United States v. D'Anjou, 16 F.3d 604, 609 (4th Cir. 1994) (providing a false name reveals consciousness of guilt).

Although the evidence of intent is entirely circumstantial, intent is rarely proven by direct evidence. Rather, the factfinder must draw reasonable inferences from the available facts. This is so because intent concerns a defendant's state of mind, which-- absent a confession -- can only be inferred from conduct. Given Smith's conduct at the Park, as described above, the jury properly could have inferred that he intended to commit a larceny. Indeed, the jury's verdict could be sustained based solely on Smith's unsolicited statement that he was jogging. Although a slim jim may be put to a lawful use, it would not be unreasonable for a jury to conclude that an individual would not go jogging with a slim jim hidden in his pants.

Smith contends that the jury heard evidence that the slim jim in question was used as a roofing tool and, therefore, could not have rationally concluded that he intended to commit a larceny. We disagree. It is well established that circumstantial evidence may support a verdict of guilty even if it does not exclude every reasonable theory consistent with innocence. See United States v. George, 568 F.2d 1064, 1069 (4th Cir. 1978). In any event, it was never established that the slim jim in question was used as a roofing tool. In fact, when Smith's employer was asked to identify the tool at trial, he initially stated that it was a tool used to open a car when the keys were locked inside. When asked if the tool had any application in roofing, Smith's employer stated that the tool in question, if it had a handle, would be the functional equivalent of a slate ripper. Thus, despite Smith's contentions to the contrary, there was no clear evidence that the slim jim was used as a roofing tool.

In sum, the evidence, viewed in the light most favorable to the Government, was sufficient to support the jury's finding that Smith possessed the slim jim with the requisite criminal intent.

IV.

For the foregoing reasons, Smith's conviction is affirmed.

AFFIRMED

9